490 So.2d 852 (1986)
Frank CABELLO, Jr.
v.
STATE of Mississippi.
No. 55648.
Supreme Court of Mississippi.
May 28, 1986.
*853 J.B. Garretty, Corinth, for appellant.
Edwin Lloyd Pittman, Atty. Gen., by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
The signed confession of fifteen year old Frank Cabello, Jr. led to his conviction of capital murder and sentence of life in prison. From a jury verdict in the Circuit Court of Alcorn County, Frank Cabello, Jr. appeals and assigns as error the following:
(1) The defendant's motion for change of venue should have been granted.
(2) The defendant's motion to exclude an involuntary confession should have been granted.
(3) The defendant's motion for a mistrial should have been granted.
(4) The jury was improperly instructed.

I.
During the afternoon of December 22, 1982, Mr. L.C. Hamm, a resident of Kossuth, Mississippi, drove to the used car lot of Vernon Gurley with the intention of making a car payment. While he was there, Mr. Hamm became suspicious of two boys who were pretending to look at a truck. Mr. Hamm paid Mr. Gurley $65.00 and left.
The next morning, December 23, 1982, Hoyt Horn, a resident of Corinth, Mississippi, awoke to find a car parked on the side of the road approximately 150 yards from his house. During the course of the day he drove by the car several times and finally stopped to investigate. Inside the car he found a dealer tag and a bible with the name "Vernon Gurley" written inside.
Mr. Horn then drove to Vernon Gurley's used car lot where he found the door to Mr. Gurley's office trailer unlocked. Inside he found Mr. Gurley's body "hogtied" in the back room of the trailer. There was duct tape covering the mouth and nose of Mr. Gurley and Mr. Horn tried to pull the tape off so that Mr. Gurley could breathe; but it was too late. On the eve of his 72nd birthday, Vernon Gurley was dead.
When the police arrived, the safe in Mr. Gurley's trailer stood partially open and a pat-down search of Mr. Gurley's body revealed his wallet was missing.
Dr. Charles Thomas McLees performed an autopsy on Mr. Gurley and testified that Mr. Gurley died from strangulation. That conclusion was based on Dr. McLees' observation of the compressed trachea of Mr. Gurley and the large quantity of edema fluid in Mr. Gurley's lungs.
*854 During the course of their investigation the police were led to Mr. L.C. Hamm who they questioned extensively concerning the two boys he had seen at the used car lot the day before the killing. From Mr. Hamm's description, the police composed drawings of the two youths.
In the interim, the manager of the local Ramada Inn reported that several guests had left his motel without paying their bill. He later identified the boys portrayed by the police drawings as the culprits.
Using the motel registration card the police traced a suspect, Frank Cabello, to a California address. Other suspects were tentatively identified as Frank Cabello, Jr. and Rico Anthony Cabello. Murder warrants were issued and an "all-points bulletin" was put out on the National Crime Index Computer System.
The three suspects, Frank Cabello, Sr., Frank Cabello, Jr., and Rico Anthony Cabello were taken into custody January 5, 1983 in Torrance, California. A search of the suspects' car revealed, among other things, rope, duct tape, and a road map with a circle around Corinth. Expert testimony established the rope and duct tape were similar to that found on the body of Mr. Gurley.
The suspects subsequently were extradicted to Corinth, Mississippi and charged with capital murder. Frank Cabello, Sr. was found guilty of capital murder and was given the death penalty. His conviction and sentence were affirmed by this Court in Cabello v. State, 471 So.2d 332 (Miss. 1985). An agreement was reached between the State and Rico Cabello whereby Rico agreed to testify against his father and his brother. In exchange, the State agreed to recommend, if the evidence showed that Rico was not present when Vernon Gurley was robbed and killed, that Rico's charges be remanded to the Youth Court of Alcorn County.
Frank Cabello, Jr., who perfects this appeal, was found guilty of capital murder and was sentenced to life in prison.

II.
Should the defendant's motion for change of venue have been granted?
Recent decisions of this Court have reminded the public that "when it is doubtful that a fair and impartial jury can be obtained in the county where the homicide has been committed, an accused on trial for his life `is but asking for his rights when he requests a change of venue'." Fisher v. State, 481 So.2d 203, 220 (Miss. 1985). Johnson v. State, 476 So.2d 1195 (Miss. 1985).
"[A] motion for change of venue ordinarily should be granted where, under the totality of the circumstances it appears reasonably likely that, in the absence of such relief, the accused's right to a fair trial may be lost." Fisher v. State, 481 So.2d at 220. This Court has often held that the decision regarding a change of venue in a criminal proceeding is committed to the sound discretion of the trial court. Winters v. State, 473 So.2d 452 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985). However, Fisher demonstrated that the venue question is in the sound discretion, not the unfettered discretion, of the trial judge.
The question now to be answered is whether the trial judge abused his sound discretion in refusing to grant the defendant's change of venue motion.
During the voir dire of the prospective jury the following exchange occurred:
BY MR. GARRETY: Now, I, like the rest of you, read many details reported in the newspaper having to do with this case, and I, like many, have heard remarks made about this case. Once again, I want you to consider what I am about to ask you: From what you read or heard, have you in any way formed any opinion as to the facts of this case? If you have, please raise your hand. All right, I see no one has raised their hand. Can you hear me, Your Honor?
BY JUDGE WICKER: Yes, sir.
BY MR. GARRETY: A number of you said you had heard about this by word of mouth. Did any of you that heard anything *855 about this case which would tend to lead you to believe some particular actual aspect of the case, would you please raise your hand? I see no hands raised. From that may I say that if one of you are telling me in all sincerity that you have heard, read, or in any way directly or indirectly acquired any knowledge of this case that would have any tendency whatsoever to affect how you might view the evidence in this case.
Furthermore, the defendant presented no evidence whatsoever to show that an impartial jury could not be found in Alcorn County.
In overruling the defendant's motion for a change of venue the trial judge stated:
I listened to all the questions, the responses made by or elicited of the jury, and although a considerable percentage did indicate that they had read about the matter, or heard about it in some way, the court received no indication that what they had read or heard would be of any influence on them with respect to the case at bar... . I did not get any indication or idea from what the jurors said that they could not try this case fairly and impartially, even having read or heard something about it, which I am sure a considerable number of them had. I am going to overrule the Motion.
This Court holds that the trial judge did not abuse his discretion in overruling the motion for change of venue.

III.
Should the defendant's motion to exclude his confession have been granted?
During the trial of Frank Cabello, Jr. the following written confession was admitted into evidence over the objections of the defendant[1]:
I, Frank Cabello, state that I will tell the truth in this statement.
Me and my dad went to the used car lot to rob the car dealer. When we got there my dad and me went into the office and my dad started to talk to him. They talked for about an half hour and then the man opened up the safe and my dad said This is a "stickup". The man said what and my dad told him to lie on his stomich and my dad told him to put his hands behind his back and my dad hogtied him and my dad told me to put some tape on his mouth and before I did my dad asked him what were his car keys were and the man said in his car so I put the tape on his mouth and pushed him in the back room and I started walking out and I saw a money box on the desk and I opened it and seen some change in it and I took the change out of the box and put it in my pocket and went outside and went into the car and waited for him to come out of the office which was about a min. Later he got into the car and went to the motel. Then my dad got out of the car and went to our car were Ricco was waiting my dad drove behind me then I parked the car got out and went into our car and started to drive to CA. He handed me a billfold and some duck tape and told me to throw them out the window and I did and I told Ricco what happened after it happened!
s/Frank Cabello, Jr.
Before the confession was admitted into evidence a hearing was conducted outside the presence of the jury to determine the admissibility of the confession. Billy Clyde Burns, Criminal Investigator for the Corinth Police Department, testified that he initially received a note from Frank Cabello, Jr. stating:
I, Frank Cabello, state that Ricco Cabello did not know about the hole crime and was not told about it until after it happened and I, Frank Cabello, will have a statement about it and I will sign it and so will Ricco Cabello.
After receiving the note Officer Burns went to Cabello's cell where he was handed the confession.
On cross-examination Burns denied threatening Frank Cabello, Jr. with solitary confinement and also denied that he had *856 denied Frank Cabello, Jr. opportunities to speak with an attorney.
Frank Cabello, Jr. testified that Billy Clyde Burns had questioned him numerous times about providing Cabello the attorney for whom he asked. According to Cabello's testimony, Burns also threatened him with the gas chamber if he did not give a statement and offered him a lighter sentence in exchange for his cooperation. Finally, he testified that he signed the confession only to help his brother and father and that he would not have done so if not for the threats of Billy Clyde Burns.
In order for a confession to be admitted into evidence, it must have been given freely and voluntarily, and without the influence of promises or threats. Frost v. State, 483 So.2d 1345 (Miss. 1986). A confession which in truth is not voluntary, which comes about as a result of threat, physical mistreatment, or the promise of reward, cannot be used either for the State's case in chief or for impeachment purposes. Powell v. State, 483 So.2d 363 (Miss. 1986).
"[W]here a criminal defendant challenges the voluntariness of a confession, he has a due process right to a reliable determination that the confession was in fact voluntarily given." Gavin v. State, 473 So.2d 952, 954 (Miss. 1985). See also, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).
In a hearing to determine the admissibility of a confession, the trial judge is the trier of fact and is charged with determining whether there has been, under the totality of the circumstances, a knowing and voluntary waiver of the accused's privilege against self-incrimination. Gavin v. State, 473 So.2d at 954. See also, Jones v. State, 461 So.2d 686, 696 (Miss. 1984); Depreo v. State, 407 So.2d 102, 106 (Miss. 1981). "[T]he State has the burden of proving all facts prerequisite to admissibility beyond a reasonable doubt." Gavin, 473 So.2d at 954.
"Age and intelligence level are factors to be considered in determining whether a waiver and a confession are free and voluntary, but are not controlling." Coleman v. State, 378 So.2d 640, 644 (Miss. 1979). See also, Saucier v. State, 328 So.2d 355 (Miss. 1976); Stewart v. State, 273 So.2d 167 (Miss. 1973).
Once the trial judge determines that a confession is admissible, his finding becomes a finding of fact which will not be reversed on appeal unless it is manifestly in error or contrary to the overwhelming weight of the evidence. Frost v. State, 483 So.2d 1345 (Miss. 1986); Gavin v. State, 473 So.2d 952 (Miss. 1985).
In finding the confession voluntarily given the trial judge in the present case stated:
The only thing that would give me any problem at all would be a portion of the testimony of Investigator Burns, who, after denying that he had threatened the defendant or given him any  made any promises to him, was asked if there wasn't a fact that he had promised that if there was cooperation, or made the statement that if there was cooperation, that it could have an affect on the severity of the sentence, and his answer was, "Certainly cooperation or non-cooperation generally has an affect (sic) on the severity of sentence."
On the voluntariness issue, this Court holds that the finding of the trial judge was neither manifestly in error nor contrary to the overwhelming weight of the evidence.

III.
Should the defendant's motion for a mistrial have been granted?
During the testimony of Billy Clyde Burns, the State began to elicit testimony concerning alleged criminal activity engaged in by the defendant in Texas. The defense attorney objected and the jury was sent out of the court room. Out of the presence of the jury, the State was allowed to develop testimony that Frank Cabello, Jr. was arrested in Braunfels, Texas, on a charge of defrauding an innkeeper, and *857 was later arrested in Torrance, California, on a charge of shoplifting.
After hearing argument from both sides, the trial judge ruled that the State could elicit testimony that the defendant was "detained" in Texas and California, but testimony concerning the alleged criminal activities was inadmissible.
Later in the trial, during the testimony of Rico Cabello, the State elicited testimony that Rico Cabello and Frank Cabello, Jr. had been arrested in Texas for defrauding an innkeeper. Afterward, the defense counsel moved for a mistrial, but his motion was denied. The trial judge instructed the jury to disregard the statement, and the trial continued.
The case law in Mississippi states clearly that the State may not introduce evidence of other crimes except to show identity, guilty knowledge, intent or motive, or where the offense charged is so interwoven with other offenses that it cannot be separated. Lanier v. State, 450 So.2d 69 (Miss. 1984). See also, Minor v. State, 482 So.2d 1107 (Miss. 1986); Neal v. State, 451 So.2d 743 (Miss. 1984).
However, the case law in Mississippi is equally clear that a jury is presumed to follow the instructions of the trial judge. See Johnson v. State, 475 So.2d 1136 (Miss. 1985); Stringer v. State, 477 So.2d 1335 (Miss. 1985); Sand v. State, 467 So.2d 907 (Miss. 1985). In the instant case, the jurors were instructed to disregard the inadmissible testimony, and the record contains no indication that they were unable to do so.
Additionally, although the testimony was improper, this Court sees no evidence that its introduction resulted in "substantial and irreparable prejudice to the defendant's case," as required by rule 5.15, Mississippi Uniform Criminal Rules of Circuit Court Practice.
Therefore, this Court holds there was no error in overruling the defendant's motion for a mistrial.

IV.
Was the jury improperly instructed?
Appellant's primary contention under this assignment of error is that the trial court should have given a manslaughter instruction. There was evidence supporting two theories concerning the circumstances surrounding the death of Vernon Gurley. Neither theory gave rise to a manslaughter instruction.
The first theory is evidenced by the defendant's confession. In that confession the defendant said he and his father went to the car lot to rob the car dealer. They went into the office and his father announced it was a "stickup." His father hogtied the victim and the defendant taped the victim's mouth. The defendant then took money from a money bag and left.
The second theory is evidenced by the testimony of the defendant. On direct examination, he claimed he and his father went to the car lot to make a deal on a car and that he found out what happened to Mr. Gurley only after he and his father left the scene.
Appellant relies on Miss. Code Ann. § 97-3-27 (1972), which states:
The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of any felony, except rape, burglary, arson, or robbery, or while such other is attempting to commit any felony besides such as are above enumerated and accepted, shall be manslaughter.
Appellant suggests the evidence in this case may have been sufficient to find he was guilty of having the intent to commit larceny instead of robbery.
Grand larceny is defined in Miss. Code Ann. § 97-17-41 (1972) as "taking and carrying away, feloniously, the personal property of another, of the value of $100... ." Petit larceny is defined in Miss. Code Ann. § 97-17-43 (1972) as "tak[ing], steal[ing] and carry[ing] away the personal property of another, under the value of $100... ."
In light of the two theories set out above, the Court finds no evidence to support a *858 manslaughter instruction. Therefore, this Court holds there was no error in the trial court's refusing to give a manslaughter instruction.
Having found no reversible error, this Court affirms the conviction of murder and the sentence of life in prison of Frank Cabello, Jr.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] The confession of the defendant contains a multitude of grammatical errors.