495 So.2d 1346 (1986)
Robert Lee WHITE, Jr.
v.
STATE of Mississippi.
No. 56565.
Supreme Court of Mississippi.
October 8, 1986.
Jefferson B. Stewart, Hattiesburg, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, C.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
Robert Lee White, Jr., was convicted of forcible rape in the Circuit Court of Forrest County, Mississippi, and sentenced to life in the custody of the Department of Corrections. He appeals, assigning as error:
I. The trial court erred in overruling his motion to suppress his statements; and
II. The trial court erred in overruling his motion for a change of venue.
Because the issues presented by these assignments of error deal with the facts surrounding the arrest and subsequent confession of Robert Lee White, Jr., as well as the amount of actual pretrial publicity surrounding his trial, it is unnecessary that this opinion recite the facts of the crime itself.
Among the motions filed by White's attorney was a motion for a change of venue and a motion to suppress White's statement. The trial court heard the testimony concerning the motion for change of venue and denied the motion. Testimony was also heard on the motion to suppress the statement and that motion was denied as well.

I.

DID THE TRIAL COURT ERR IN OVERRULING WHITE'S MOTION TO SUPPRESS WHITE'S STATEMENTS?
White argues that based upon the "totality of the circumstances" test his statement *1347 should have been excluded. White contends that he was subjected to violence or threats, direct or indirect promises, prolonged detention, long and intense interrogation, physical deprivations, and limited access to counsel. White also alleges that he was inadequately informed of his rights and was under the influence of alcohol and drugs. All of this was testified to by White at the suppression hearing.
Through cross-examination and the direct testimony of all of the officers involved the prosecution rebutted the allegations of White.
There is no question on this record that White received those warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). White contends that the videotaped statement and the written statement were involuntarily given and that he did not intelligently, knowingly, and voluntarily waive his Miranda rights. White brought this to the attention of the trial court by proper motion as required by Hemmingway v. State, 483 So.2d 1335 (Miss. 1986). Prosecution then shouldered the burden of proving to the trial court's satisfaction that not only had White been given his Miranda rights but that he had also intelligently, knowingly, and voluntarily waived those rights. The burden of proof bourne by the prosecution in this effort is beyond a reasonable doubt. Agee v. State, 185 So.2d 671 (Miss. 1966). When the voluntariness of a confession is challenged by an accused he has a due process right to a reliable determination that the confession was in fact voluntarily given. Cabello v. State, 490 So.2d 852, 856 (Miss. 1986). This voluntariness of confession or statement is determined in the light of "totality of the circumstances" surrounding the giving of that statement. Brown v. State, 483 So.2d 328, 329 (Miss. 1986); Gavin v. State, 473 So.2d 952 (Miss. 1985); Jones v. State, 461 So.2d 686 (Miss. 1984); and Neal v. State, 451 So.2d 743 (Miss. 1984).
The trial court found that the prosecution had met its burden of proof and admitted the statement into evidence. Great deference is given a trial judge once he determines that a confession is voluntary and therefore admissible, "His finding becomes a finding of fact which will not be reversed on appeal unless it is manifestly in error or contrary to the overwhelming weight of the evidence." Cabello at 856; Frost v. State, 483 So.2d 1345 (Miss. 1986).
The overwhelming weight of the evidence on this record is that the prosecution by clear and convincing evidence proved not only that White had received his Miranda warnings, but that he waived his rights intelligently, knowingly, and voluntarily. The admission of the statements into evidence by the trial judge was not manifest error nor was it contrary to the overwhelming weight of the evidence and there is no merit to this assignment.

II.

DID THE TRIAL COURT ERR IN OVERRULING WHITE'S MOTION FOR A CHANGE OF VENUE?
In support of his motion for change of venue, White introduced the testimony of two witnesses, Janet Braswell for The Hattiesburg American and Alma White, the accused's mother, as well as a series of newspaper articles.
Janet Braswell of The Hattiesburg American testified that there had been a string of unsolved rapes which had occurred in the western part of Hattiesburg, the rapes were referred to as the west-side rape cases and that particular reference had been used since December 1982. She testified that she had been covering this line of rapes since the rape of this prosecutrix occurred in February of 1982. In December of 1982 there were a series of nine or ten stories on the general subject of rape and the term west-side rapist was mentioned in about 90 percent of the articles. Ms. Braswell testified also that the circulation of The Hattiesburg American is roughly 26,000.
Out of the series of articles from The Hattiesburg American, offered by the appellant, four of those were of the greatest evidentiary value to the appellant in his *1348 change of venue motion. In each of those articles the term west-side rapist was used. Those exhibits are as follows:

Exhibit A was a front page story in The Hattiesburg American, in which it was reported that three rape charges had been filed against Robert Lee White, Jr., however he had been indicted for only one of those rapes. In the article it was also brought out that he had been a suspect in as many as eleven rapes in the Hattiesburg area.

Exhibit B was another front page story in the American, which reported that Robert Lee White, Jr., had been charged with the latest in a series of rapes in the Hattiesburg area. It also noted the appellant resided in the Palmer's Crossing Community of Hattiesburg.

Exhibit C was yet a third front page story from The Hattiesburg American which linked Robert Lee White, Jr., to as many as fifteen rapes in the Hattiesburg area.

Exhibit D was another front page story which reported that the appellant's bond had been set at $750,000.00. Along with the article there was a photograph of Robert Lee White, Jr., in the custody of Forrest County officers.
The second witness who testified on behalf of the appellant in the change of venue proceeding was his mother, Alma White. Alma White testified that she did not think her son could get a fair trial in Forrest County, since Robert's arrest she had received numerous phone calls concerning Robert and there was a great deal of gossip about the rape and Robert's arrest in the Palmer's Crossing Community. The witness testified that she had viewed several TV news spots concerning the arrest and arraignment of Robert and that the media had connected her son with the alleged west-side rapist.
Alvin Eaton, Vice President of WDAM television which serves among other areas, Forrest and Jones Counties, testified that he believed a fair trial could be had for White and that he was of the opinion that there had been no undue publicity in the case as opposed to others. Eaton testified that he did not feel that the name Robert Lee White, Jr., had been equated to the term west-side rapist in the public's mind.
John Anderson, a black attorney in Forrest County, testified that he did not believe the publicity surrounding White had been that significant and that most of the people with whom he had spoken did not know that Robert Lee White, Jr., had been charged with rape. Anderson also testified that he believed that a fair trial could be had for White in Forrest County.
The court after argument on the motion for change of venue reserved its ruling until after voir dire. At the voir dire only ten (10) potential jurors indicated that they had heard anything about this particular case. Of the venire called only three who indicated that they had been aware of any media coverage were returned on the final jury. Of those chosen, all said that they would not be affected by what they had been exposed to and would be able to render a fair and impartial verdict.
It is fundamental and essential to our form of government that all persons charged with a crime have the right to a fair trial by an impartial jury. Mississippi law on the subject of change of venue has been primarily summarized in the cases of Cabello v. State, 490 So.2d 852 (Miss. 1986); Wiley v. State, 484 So.2d 339 (Miss. 1986); Fisher v. State, 481 So.2d 203 (Miss. 1985); Johnson v. State, 476 So.2d 1195 (Miss. 1985); and the cases incorporated therein. These cases focus on the presence of extraordinary and intensely prejudicial pre-trial publicity. The rule propounded therein is that "the accused has a right to a change of venue when it is doubtful that an impartial jury can be obtained ... upon proper application, there arises a presumption that such sentiment exists; and, the State then bears the burden of rebutting that presumption." Johnson at 1210-11.
The "proper application" requirement is a motion supported by affidavits of two or more witnesses, alleging that "by reason of prejudgment of the case, or a grudge or ill will to the defendant in the public mind, he cannot have a fair and *1349 impartial trial in the county where the offense is charged to have been committed." Mississippi Code Annotated, § 99-15-35 (1972).
While the presumption may be rebutted during voir dire, "in some circumstances pretrial publicity can be so damaging and the presumption so great, that no voir dire can rebut it." Johnson at 1211. We have set forth certain elements which, when present would serve as an indicator to the trial court as to when the presumption is irrebutable. These elements are:
(1) Capital cases based on considerations of a heightened standard of review;
(2) Crowds threatening violence toward the accused;
(3) An inordinate amount of media coverage, particularly in cases of
(a) serious crimes against influential families;
(b) serious crimes against public officials;
(c) serial crimes;
(d) crimes committed by a black defendant upon a white victim;
(e) where there is an inexperienced trial counsel.
Recently, in Cabello at 854, this Court stated:
"[A] motion for change of venue ordinarily should be granted where, under the totality of the circumstances it appears reasonably likely that, in the absence of such relief, the accused's right to a fair trial may be lost." Fisher v. State, 481 So.2d at 220. This Court has often held that the decision regarding a change of venue in a criminal proceeding is committed to the sound discretion of the trial court. Winters v. State, 473 So.2d 452 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985). However, Fisher demonstrated that the venue question is in the sound discretion, not the unfettered discretion, of the trial judge.
From a careful review of this record we find only four of the Johnson/Fisher elements present:
(1) one in which there was a black defendant and a white victim;
(2) one in which there had been a series of crimes committed;
(3) one in which there was supposition that the appellant was guilty of other crimes; and
(4) one in which there was extensive local media coverage.
On the Fisher/Johnson criteria, we do not find sufficient evidence present which would serve as an indicator that an irrebuttable presumption existed that the accused could not get a fair trial in Forrest County, Mississippi.
We further find from this record that the presumption was rebuttable and that the State met its burden in rebutting the presumption. There is no merit to this assignment of error.
The conviction of forcible rape and sentence to life in the custody of the Department of Corrections are affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.