# IN THE COURT OF APPEALS 08/20/96

## OF THE

## STATE OF MISSISSIPPI

### NO. 92-KA-00976 COA

**BRIAN CLAYTON HICKSON**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. BILLY J. LANDRUM

COURT FROM WHICH APPEALED: JONES COUNTY CIRCUIT COURT (2D DIST.)

ATTORNEYS FOR APPELLANT:

BOYCE HOLLEMAN

TIM C. HOLLEMAN

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: JOLÉNE M. LOWRY

DISTRICT ATTORNEY: JEANENE T. PACIFIC

NATURE OF THE CASE: CRIMINAL: SEXUAL BATTERY

TRIAL COURT DISPOSITION: CONVICTED; SENTENCED TO 30 YRS IMPRISONMENT

BEFORE FRAISER, C.J., BARBER, AND SOUTHWICK, JJ.

SOUTHWICK, J., FOR THE COURT:

Brian Hickson was convicted of sexual battery and sentenced to thirty years in prison. He appeals his conviction, contending that venue was improper, jury deliberations were tainted, evidence was improperly admitted or refused, the jury poll was not made in the correct form, and challenging the weight and sufficiency of the evidence. We affirm.

## FACTS

Two sexual assaults took place in Jones County in 1989 and 1990 that were widely reported in the press—one at a video rental store and another in a pastor's office at a church. The second assault was against the victim in this case and gave rise to this prosecution of Hickson.

In September, 1990, the victim was alone at work in a church office when Hickson came in inquiring about a cemetery. The victim directed Hickson to a man who worked for the cemetery. Several minutes later, Hickson returned, drawing a gun and pointing it at the victim. Hickson forced the victim into the church pastor's office and threatened to kill her if she did not follow his instructions. Hickson sexually assaulted the victim and fled.

Following her attack, the victim was examined by a physician and evidence collected, including fluid and hair samples. The victim gave a description of her attacker and participated in a process that resulted in a composite being developed. For fourteen months the victim's attacker went unapprehended.

After the passage of those months, the victim was at a fair with her sister when she spotted Hickson and identified him as her attacker. Hickson was arrested and charged with the assault of this victim and was also charged in the other assault. Again, the media widely reported the developments in the case.

At trial, Hickson moved for a change of venue. Disputed proof was presented concerning the quantity and quality of the knowledge held by the citizenry. The motion was denied following *voir dire* of the jury. Inquiry of the venire demonstrated that, while most of them knew something about the case from the media and were aware of the pending second charge, a majority of the jurors responded that they could be fair and impartial in their deliberations.

Following his trial, Hickson was convicted and sentenced to thirty years in prison.

## DISCUSSION

### 1. Change of Venue

Hickson argues that media accounts of the sexual battery that is the subject of this case which included a description of another sexual battery with which Hickson was charged, poisoned the community against him. Hickson contends that he could not have received a fair trial in Jones County and that his motion for a change in venue was erroneously denied. We disagree.

Supporting his motion for a change of venue, Hickson presented testimony from members of the community indicating that they had made a determination concerning Hickson's guilt. Of particular

concern to Hickson was that members of the community knew of Hickson's implication in another sexual battery case. The State presented evidence concerning whether Hickson's case had been prejudged by the community and whether he could receive a fair trial. The State's evidence supported its view that the trial should remain in Jones County. Following this foundation of controverted proof, the trial court reserved ruling on the motion for a change of venue pending completion of *voir dire*. The examination of members of the panel revealed that, while many of them knew about the cases of sexual battery from the media, all of the prospective jurors indicated that they would be fair and impartial in judging Hickson's guilt. The trial court evidently agreed that the jury could decide the case fairly and impartially, without a predetermination of guilt, and denied the motion to change venue.

"It is fundamental and essential to our form of government that all persons charged with a crime have the right to a fair trial by an impartial jury." *White v. State*, 495 So. 2d 1346, 1348 (Miss. 1986). Based upon this, an "accused has a right to a change of venue when it is doubtful that an impartial jury can be obtained . . . ." *Id.* (citation omitted). However, the right does not arise upon the mere suggestion that pretrial publicity has poisoned the community against a particular defendant. Instead, the defendant must properly apply for a change of venue. *Id.* A proper application, *i.e.*, one including at least two affidavits attesting to the impossibility of a fair and impartial trial, gives rise to a rebuttable presumption that the venue should be changed in most circumstances. *Id.* at 1348-49 (citation omitted); Miss. Code Ann. § 99-15-35 (1972). However, the State may rebut the presumption and preserve the original venue for the trial. *Id.* at 1348 (citation omitted). *Voir dire* itself may facilitate successful rebuttal of the presumption. *Id.* at 1349 (citation omitted).

The trial court is charged with examining the totality of the circumstances and exercising its discretion in determining whether it is reasonably likely that an accused would be denied his right to a fair trial. *Id.* (citations omitted); *see*, *Box v. State*, 610 So. 2d 1148, 1153 (Miss. 1992) (citations omitted) (holding that pretrial publicity did not entitle defendant to change of venue). Of course, the trial judge's discretion is not unfettered. *Fisher v. State*, 481 So. 2d 203, 215 (Miss. 1985). As the court has explained:

> The sound exercise of the discretion vested in the trial judge when faced with a motion for change of venue must be informed by the evidence presented at the venue hearing coupled with the trial judge's reasoned application of his sense of the community and, particularly in a case such as this, an awareness of the uncontrovertible impact of saturation media publicity upon the attitudes of a community. No resort to expert psychological or behavioral science testimony is necessary to inform the judicial mind of that which common sense and experience have taught. A venire drawn from a fair cross-section of the community in theory and in fact is supposed to, and generally will, represent that community—and reflect the biases and prejudices of that community—as every judge and lawyer who has ever picked a jury well knows. The trial judge must also exercise his discretion consistent with legally established criteria which, as we will explain below, require more than the mere selection of twelve jurors against whom no challenge for cause may lie.

*Id.* (citations omitted).

The mere volume of publicity can mandate a change of venue by giving rise to a strong presumption of community prejudice. The court has suggested that media coverage will warrant a change of venue only if it is "massive" or of "epidemic proportions" in the original place selected for trial. *Box v. State*, 610 So. 2d 1148, 1153 (Miss. 1992) (citations omitted). The focus has been "on the presence of extraordinary and intensely prejudicial pretrial publicity." *White v. State*, 495 So. 2d 1346, 1348 (Miss. 1986). However, a few news stories alone and some familiarity by a venire with the cases pending against the accused is simply not enough to warrant a change of venue and an inference that the accused's right to a fair trial has been impinged. *Harris v. State*, 537 So. 2d 1325, 1328 (Miss. 1989). Simply because a high percentage of prospective jury members hears something about a case does not require a change of venue. *See Box*, 610 So. 2d at 1153.

Nevertheless, even when there is extensive pretrial publicity, reversal is not automatic where venue remains unchanged. *Lutes v. State*, 517 So. 2d 541, 545-46 (Miss. 1987) (citation omitted). "In reviewing whether the trial court abused [its] discretion in denying a change of venue 'we look to the completed trial, particularly including the *voir dire* examination of prospective jurors, to determine whether the accused received a fair trial.'" *Id.* at 546 (citations omitted). Thus, in a case in which *voir dire* disclosed that all jury members ultimately selected "said that they would not be affected by what they had been exposed to and would be able to render a fair and impartial verdict," the trial court did not err in refusing to transfer the case. *White v. State*, 495 So. 2d 1346. 1348 (Miss. 1986).

Our review of the evidence concerning the pretrial publicity in this case and the *voir dire* of the jury demonstrates that the trial court did not err in failing to transfer venue. While several newspaper articles were written over a period of time and a few news broadcasts detailed Hickson's implication in this case and another sexual battery, the news coverage did not evidence or create a poisoned atmosphere towards Hickson in Jones County. Moreover, the testimony presented by the prosecution from members of the community was persuasive in advancing the position that no bias against Hickson was pervasively present. Lastly, the selected jury panel unanimously indicated that it would fairly and impartially judge Hickson's guilt.

*2. Jury Deliberations*

Hickson contends that the prejudice to his case from the publicity attendant to his trial was compounded and evidenced by the jury's consideration of an additional sexual battery of which Hickson was accused. In an inquiry conducted by the trial court following the rendering of the verdict, it was disclosed that a juror had asked during deliberations whether any other member of the jury knew about other charges pending against Hickson. The foreman responded that the jury could not consider the other charges. There was no evidence presented to demonstrate that the jury relied on Hickson's implication in another crime in reaching its decision in this case.

In this case, though there was ample examination of the jury panel, no evidence was developed demonstrating either that the nature of the other charges against Hickson had been discussed or that the other charges might suggest his guilt here. Instead, the foreman properly staved off discussion of the issue of other crimes and directed the panel to focus on the charges before it. In light of these circumstances, the jury's deliberations were not impermissibly tainted and the result of their deliberations stands unblemished. There is no indication in this case of prejudice, wrongful intent, or

unfairness in the aborted discussion of another charge against Hickson. *Knotts ex rel. Knotts v. Hassell*, 659 So. 2d 886, 892-93 (Miss. 1995).

## 3. Evidentiary Matters

Hickson challenges the admission of testimony as the subject of a discovery violation. He cites Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice in support of his position, requiring the State to provide disclosure of anticipated testimony from its witnesses. Unfortunately, Hickson neither objected contemporaneously to the challenged testimony nor did his attorneys request a continuance to develop their response to the evidence. Accordingly, he is precluded from raising this aspect of his evidentiary challenges for the first time on appeal. *Ladner v. State*, 584 So. 2d 743, 751-53 (Miss.), *cert. denied*, 502 U.S. 1015 (1991).

Hickson also contends that the prosecution inappropriately put a rebuttal witness on the stand when it knew that her testimony was false and when the witness had not previously been disclosed to the defense. Again, Hickson did not object to the introduction of the witness' testimony and he cannot now complain to this Court without having first given the trial court an opportunity to correct the alleged error below. *Ladner*, 584 So. 2d at 751-53.

Hickson additionally argues that the admission of a mug shot was erroneous. Hickson did object at trial to the admission of the photograph which depicts Hickson standing in front of a height measure and wearing a case identification placard listing his case number and the date.

The State argued for admission of the picture because Hickson had made the accuracy of the descriptions given by the victim and the composites produced a central part of his defense. The photograph is the only one presented at trial which shows Hickson without a beard—in the same way that the composites portray the victim's attacker without a beard.

"Mug shot photographs are generally not admissible because they tend to reflect unfavorably on the defendant's character as a result of the implied criminal history." *Ellis v. State*, 667 So. 2d 599, 610 (Miss. 1995) (citations omitted). Admission of mug shot photographs must be preceded by three prerequisites to prevent a finding of reversible error:

> 1. The Government must have a demonstrable need to introduce the photographs; and
>
> 2. The photographs themselves, if shown to the jury, must not imply that the defendant had a prior criminal record; and
>
> 3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs."

*Ellis*, 667 So. 2d at 610 (citations omitted). In light of this standard, we conclude that the trial court did not abuse its discretion in admitting the photograph. *See Taylor v. State*, 672 So. 2d 1246, 1270 (Miss. 1996) (citations omitted) (explaining standard of review). The mug shot was taken of Hickson following his arrest on the charge in this case. It is not related to nor does it suggest a *prior* criminal

record or an implied criminal *history*. Hickson's appearance was a fact question raised by the Defendant himself. There was no error.

Lastly, Hickson contends that evidence concerning a $1,800.00 reward and the victim's entitlement to the reward should have been presented to the jury. He argues that it was error for the trial court to refuse his request to present evidence of the reward. We disagree and conclude that the trial court did not abuse its discretion by not admitting the evidence. The defense failed to make any proof to show that the victim knew about the reward. Moreover, the decision to give the reward to the victim was not made contingent upon the success of the victim's testimony. Consequently, the reward presented little probative value for the jury. *See Wetzel v. State*, 225 Miss. 450, 475, 76 So. 2d 188, 193-94 (1954), *appeal dismissed and cert. denied*, 350 U.S. 870 (1955).

*4. Jury Poll*

The jury was polled following the announcement of its verdict. The court inquired with each juror whether "this [was] the verdict [each] voted for" by calling each juror's name. Hickson contends that this inquiry did not follow the proper form, and instead, the court should have asked each juror "is this your verdict?" Hickson made no contemporaneous objection to the manner in which the jury was polled and, accordingly, is precluded from raising the issue for the first time before this Court. *See Berry v. State*, 288 So. 2d 457, 460 (Miss. 1974) (citation omitted). Hickson could have easily remedied the perceived error in the polling if he was dissatisfied. Instead, his counsel remained silent. There is nothing confusing nor quesitonable about the phrasing.

*5. Weight and Sufficiency of the Evidence*

Hickson challenges the weight and sufficiency of the evidence. Our standard for reviewing challenges to convictions based on sufficiency of the evidence is wellestablished. As to each element of the offense, we consider all of the evidence in the light most favorable to the verdict. We reverse when, with respect to an element of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). As to whether the verdict is contrary to the overwhelming weight of the evidence, a similar standard is employed. We view the evidence in the light most favorable to the verdict. The trial court is given discretion to order a new trial in the face of overwhelming evidence contrary to the jury's verdict in order to prevent an unconscionable injustice. *McClain*, 625 So. 2d at 781 (citation omitted) . In this case, there was ample evidence of Hickson's guilt.

The Mississippi Code provides that "[a] person is guilty of sexual battery if he . . . engages in sexual penetration with . . . [a]nother person without . . . her consent . . . ." Miss. Code Ann. § 97-3-95 (1972). The code defines sexual penetration in a manner including the conduct attributed to Hickson. *Id.* § 97-3-97(a). The evidence presented at trial supports the conclusion that Hickson was guilty of sexual battery in this case. Hickson does not challenge the victim's account of her attack nor does he deny that she was sodomized. Instead, Hickson argues that the victim is mistaken in identifying him as her attacker and cites what he perceives as inconsistencies in her testimony in support of his position that the evidence of his identity was lacking.

Our review of the identification evidence in this case demonstrates that the jury's conclusion that the victim was sexually battered by Hickson was not contrary to the weight of the evidence. Following

her attack, the victim created a transparency composite of her attacker, assisted in the drawing of a composite sketch, and gave the police a description of the man who sodomized her. The composites and descriptions are uncannily accurate. The transparency composite eerily portrays Hickson almost identically to the mug shot taken of him for another battery.

Hickson's main challenge to the accuracy of his description by the victim centers around three details: whether he had facial hair at the time of the attack, the failure of the victim to note his bald spot, the failure of the victim to describe Hickson's cleft chin, and her failure to recall his bright blue eyes until she testified at trial. These details do not affect the validity of the identification. Fourteen months after the attack, the victim spotted Hickson at a fair and identified him as her attacker. At trial, the victim positively identified Hickson as her attacker. The composites, despite their lack of the features focused on by Hickson, remain accurate. More important, Hickson presented his argument concerning the accuracy of the descriptions to the jury. His argument was apparently rejected.

Hickson also presented an alibi defense. He substantiated his alibi with testimony from his mother and sister. Presentation of an alibi defense, however, does not entitle an accused to automatic acquittal. Instead, the jury is permitted to consider whether it believes the alibi. *Lee v. State*, 457 So. 2d 920, 923 (Miss. 1984) (citations omitted). In this case, the jury decided that it did not believe Hickson's alibi but, rather, was convinced of his guilt. It was entitled to do so.

**THE JUDGMENT OF CONVICTION OF THE JONES COUNTY CIRCUIT COURT FOR THE SECOND JUDICIAL DISTRICT OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.**

**FRAISER, C.J., BRIDGES AND THOMAS, P.JJ., BARBER, COLEMAN, DIAZ, KING, McMILLIN, AND PAYNE, JJ., CONCUR.**