983 So.2d 364 (2008)
Marco Terrell LAMAR, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00692-COA.
Court of Appeals of Mississippi.
June 3, 2008.
*365 David Lydell Tisdell, attorney for appellant.
Office of the Attorney General by Deshun Terrell Martin, attorney for appellee.
EN BANC.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On January 17, 2007, a jury in the Panola County Circuit Court found Marco Terrell Lamar guilty of Count I, aggravated assault with a deadly weapon, and *366 Count II, possession of a controlled substance. Lamar was sentenced as a habitual offender to serve twenty years in the custody of the Mississippi Department of Corrections for Count I and sentenced to six years' post-release supervision for Count II. The sentence for Count II was to run consecutively to the sentence imposed for Count I. Lamar filed post-trial motions, which were denied. Lamar now appeals, asserting the following issues: (1) the trial court erred in denying his motion for a new trial or, in the alternative, for a judgment notwithstanding the verdict; (2) his trial counsel was ineffective; (3) the trial court erred in allowing the State to introduce certain evidence into the record; (4) the trial court erred in refusing his proposed jury instruction D-4; (5) the trial court erred in failing to issue a cautionary instruction to the jury regarding the testimony of co-conspirators; and (6) the cumulative effect of all the errors requires reversal. Finding no error, we affirm.

FACTS
¶ 2. Eramus Spears, Demarquese Bledsoe, and Alton Key were returning from Memphis, Tennessee on June 30, 2006, and agreed to meet Lamar in the parking lot of the Wal-Mart shopping center in Batesville, Mississippi. Key had called Lamar to set up the meeting. Upon their arrival at the parking lot, Spears and Bledsoe got into Lamar's car in order to purchase ten dollars worth of marijuana from Lamar. While in Lamar's car, the three men smoked some marijuana. Spears testified that after he and Bledsoe exited Lamar's car, Bledsoe was carrying a large bag. Bledsoe testified that while he was sitting in the back of Lamar's car, he saw a large bag of marijuana on the floor. Bledsoe testified that he decided to steal the bag from Lamar and grabbed it when he and Spears exited the car. Bledsoe did not remit payment to Lamar for the bag of marijuana. Spears testified that after he saw Bledsoe with the bag of marijuana, he saw Lamar leaning from the driver's side window holding a gun. Lamar fired his gun multiple times. Spears was shot in the leg and wrist, and his cell phone was also hit by a bullet. During the shooting, Bledsoe dropped the bag of marijuana on the ground and ran away. Bledsoe stated that he and Spears ran inside Wal-Mart and out the back door, where they were found by Key. Key then drove Bledsoe and Spears to the hospital.
¶ 3. Reginald Kathy was walking toward the Wal-Mart store when he heard several gunshots. Kathy stated that after he heard the gunshots, he saw two men running away from the scene. Kathy testified that he saw a black Dodge Magnum with tinted windows driving slowly toward where the two men were running before the car turned and left the parking lot. Kathy stated that he recognized Lamar as the driver.

DISCUSSION
I. DID THE TRIAL COURT ERR IN FAILING TO GRANT LAMAR'S MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, A JUDGMENT NOTWITHSTANDING THE VERDICT?
¶ 4. In his first issue on appeal, Lamar argues that the trial court erred in failing to grant his motion for a new trial or, in the alternative, a judgment notwithstanding the verdict. Lamar contends that the aggravated assault conviction was against the overwhelming weight of the evidence and that there was insufficient evidence to support the possession conviction. As each argument relies upon different standards of review, we will discuss them separately.
*367 A. Overwhelming Weight of the Evidence
¶ 5. Our standard of review concerning the overwhelming weight of the evidence is well settled: "[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005) (citing Herring v. State, 691 So.2d 948, 957 (Miss. 1997)). The appellate court sits as a hypothetical "thirteenth juror." Id. Therefore, the Court weighs the evidence "in the light most favorable to the verdict." Id. If, in this position, the Court disagrees with the verdict of the jury, "the proper remedy is to grant a new trial." Id.
¶ 6. Lamar contends that the State failed to prove beyond a reasonable doubt that he was guilty of aggravated assault. Lamar argues that the testimony does not prove he was the shooter. Lamar bases his contention on the initial statements made by Spears and Bledsoe to the police. Spears and Bledsoe did not want to admit they were smoking marijuana with Lamar, nor did Bledsoe want to admit that he stole a bag of marijuana from Lamar, so they initially told the police that they were exiting Wal-Mart when the shooting began. However, Spears and Bledsoe eventually admitted to the police that they were with Lamar in Lamar's black Dodge Magnum prior to the shooting. Spears testified that he saw Lamar leaning from the car window holding a gun. Kathy testified that, immediately after hearing gunshots, he saw Lamar in a black Dodge Magnum.
¶ 7. We cannot find that, with the evidence produced at trial, upholding the verdict of guilty would sanction an unconscionable injustice. This issue is without merit.
B. Legal Sufficiency of the Evidence
¶ 8. Our standard in regard to challenges relating to the legal sufficiency of the evidence is well settled: In reviewing the sufficiency of the evidence, "all evidence supporting a guilty verdict is accepted as true, and the [State] must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence." Bell v. State, 910 So.2d 640, 646(¶ 16) (Miss.Ct.App.2005) (citing McClain v. State, 625 So.2d 774, 778 (Miss. 1993)). Furthermore, the jury determines the credibility of witnesses and resolves conflicts in the evidence. Evans v. State, 725 So.2d 613, 680-81 (¶ 293) (Miss.1997).
¶ 9. Lamar argues that the evidence was insufficient to prove that the bag of marijuana belonged to him. The jury heard the testimony from Spears, who saw Bledsoe take a large bag from Lamar's car, and Bledsoe, who admitted to stealing a large bag of marijuana from Lamar's car, and found their stories to be credible. Accepting as true all the evidence supporting the guilty verdict, we cannot find that Lamar's motion for a JNOV should have been granted. This issue is without merit.
II. DID LAMAR RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 10. In his second issue on appeal, Lamar cites to several instances that he contends show the ineffectiveness of his trial counsel. To prevail on this issue Lamar must demonstrate that his trial counsel's performance was deficient and the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We will address Lamar's complaints separately.
A. Failure to Object to the Testimony of Reginald Kathy
¶ 11. Lamar states that during voir dire neither the State nor his counsel *368 asked the jury whether they knew Kathy. Lamar contends that because of this, his attorney should have objected to the testimony of Kathy. We do note that Kathy's name was on a long list of witnesses subpoenaed for trial. However, Lamar has not pointed to how he was prejudiced by his attorney's failure to object in this manner. This issue is without merit.
B. Failure to Seek a Change of Venue
¶ 12. Lamar claims that his attorney was ineffective in failing to seek a change in venue. Lamar contends that the shooting had been highly publicized; thus, he could not receive a fair trial in Panola County. Lamar cites to several newspaper articles describing the shooting: one of the articles does not mention Lamar by name; another article concerns Lamar turning himself in to authorities; another article is a list of persons, including Lamar's name and his alleged crimes, referred to the grand jury; the final article is another list of persons who have been charged with crimes, including Lamar's name and charge. We fail to see how this level of newspaper reporting rises to the level of "extraordinary and intensely prejudicial pretrial publicity" necessary for a change in venue. See Davis v. State, 767 So.2d 986, 993(¶ 16) (Miss.2000). Furthermore, Lamar's crime does not fall under one of the exceptions that cannot be refuted by the prosecution during voir dire as enumerated by the supreme court in White v. State, 495 So.2d 1346, 1349 (Miss.1986). We find no merit to this issue.
C. Failure to Call a Witness to Testify on His Behalf
¶ 13. Lamar contends that his attorney was ineffective for failing to call Walter Earl Ware to testify on his behalf. Lamar states that Ware's testimony would have cast doubt on the credibility of the State's witnesses. However, according to the record, Ware was subpoenaed by the State to appear at trial. For reasons unknown and with no assistance from the State's brief, Ware was never called to testify by the State. In his statement to the police, Ware saw two men (Bledsoe and Spears) run inside Wal-Mart while being chased by another man (Lamar). We cannot find anything in the statement that Lamar claims would show another shooter. This issue is without merit.
D. Failure to Allow Lamar to Testify in His Own Defense at Trial
¶ 14. Lamar states that he was denied the right to testify in his own defense. Lamar's contention is merely a general assertion, and he fails to support this assertion with evidence from the record. This issue is without merit.
III. DID THE TRIAL COURT ERR IN ALLOWING CERTAIN EVIDENCE TO BE INTRODUCED INTO THE RECORD?
¶ 15. In his third issue on appeal, Lamar argues that the trial court erred in allowing a cell phone found in the parking lot to be introduced into evidence. However, Lamar failed to object at trial to the admission of the cell phone into evidence. "[T]he failure to object at trial to the introduction of evidence bars the accused from objecting to the introduction of that evidence at a later date." Waldon v. State, 749 So.2d 262, 266(¶ 8) (Miss.Ct.App. 1999) (citing Robinson v. State, 585 So.2d 735, 737 (Miss.1991)). This issue is deemed waived for appellate purposes.
IV. DID THE TRIAL COURT ERR IN REFUSING LAMAR'S JURY INSTRUCTION D-4?
¶ 16. In his fourth issue on appeal, Lamar argues that the trial court erred in refusing his jury instruction D-4. Lamar's instruction D-4 was an identity *369 instruction that told the jury that the State had to prove the accuracy of the identification of Lamar as the perpetrator of the crime. In reviewing the denial of a jury instruction, the appellate court must consider not only the denied instruction but also all of the instructions that were given to ascertain if error lies in the refusal to give the requested instruction. See Coleman v. State, 697 So.2d 777, 782 (Miss. 1997). "A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in another instruction, or is without foundation in the evidence." Heidel v. State, 587 So.2d 835, 842 (Miss.1991) (internal citations omitted).
¶ 17. The trial court stated that instruction D-4 was misleading to the jury. The trial court held that: "It doesn't warrant a jury instruction as to whether or not they [Bledsoe and Spears] misidentified who they say they were in the car smoking dope with . . . and I think it is a totally improper instruction for this factual case." The trial court further noted that there was another instruction addressing the jury's function to determine the credibility of witnesses. Upon review of the instructions, it is clear that the jury was properly instructed. This issue is without merit.
V. DID THE TRIAL COURT ERR IN FAILING TO ISSUE A CAUTIONARY INSTRUCTION?
¶ 18. In his fifth issue on appeal, Lamar argues that the trial court erred in failing to issue a cautionary instruction in regard to the testimony of Bledsoe and Spears, whom Lamar describes as "co-conspirators." Both Bledsoe and Spears were originally charged with possession of marijuana, but the charges were later dropped. We note that Lamar never requested a cautionary instruction. Although Bledsoe and Spears are not identified as such, it is true that a jury may be instructed that it should regard the testimony of co-conspirators with great caution. Slaughter v. State, 815 So.2d 1122, 1134-35 (¶¶ 64-68) (Miss.2002). However, the granting of a cautionary instruction with regard to co-conspirator testimony is within the trial court's discretion. Wheeler v. State, 560 So.2d 171, 173 (Miss.1990). Here, no request for the cautionary instruction was made. This issue is without merit.
VI. DOES THE CUMULATIVE EFFECT OF THE ERRORS REQUIRE REVERSAL?
¶ 19. In his final issue on appeal, Lamar argues that the cumulative effect of all the errors requires this Court to reverse his convictions. Having found Lamar's arguments to be without merit, we find no cumulative error that would necessitate a reversal. Therefore, we affirm.
¶ 20. THE JUDGMENT OF THE PANOLA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT WITH A DEADLY WEAPON, AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER AND COUNT II, POSSESSION OF A CONTROLLED SUBSTANCE, AND SENTENCE OF SIX YEARS OF POST-RELEASE SUPERVISION, WITH SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, *370 JJ., CONCUR. ROBERTS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, GRIFFIS AND CARLTON, JJ.
ROBERTS, J., Specially Concurring:
¶ 21. I concur with the majority's decision to affirm the judgment of the circuit court. However, because the sentence imposed upon Marco Terrell Lamar under Count II is patently unlawful, I am compelled to write separately to address Lamar's sentence. Since Lamar was sentenced as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2000) and as a repeat drug offender pursuant to Mississippi Code Annotated section 41-29-147 (Rev.2005), the circuit court was required to sentence Lamar to forty-eight years for possession of marijuana.[1]
¶ 22. Along with the aggravated assault charge, Lamar was indicted in Count II for possession of more than one but less than five kilograms of marijuana pursuant to Mississippi Code Annotated section 41-29-139(c)(2)(F) (Rev.2005). The prosecution later filed a motion to amend the indictment to include charges that Lamar was a habitual offender and a repeat drug offender. The circuit court granted the prosecution's motion long before the trial. The jury found Lamar guilty of both aggravated assault and possession of over one but less than five kilograms of marijuana.[2] During Lamar's sentencing hearing, the prosecution presented evidence that Lamar had three prior felony convictions. Certified copies of the judgments of conviction were admitted into evidence at the sentencing hearing.
¶ 23. Two of those three prior convictions resulted from guilty pleas before the United States District Court for the Northern District of Mississippi. On February 23, 1995, Lamar pled guilty in federal court under Count II of a three count indictment to aiding and abetting the possession of cocaine with intent to distribute. Under Count III, Lamar pled guilty to "use/carrying [of] a firearm during/in relation to a drug trafficking crime." The United States District Court sentenced Lamar to thirty months of incarceration for Count II and sixty months of incarceration for Count III. As for Lamar's third prior conviction, on October 17, 1995, Lamar went before the Panola County Circuit Court and pled guilty to sale of cocaine. The circuit court sentenced Lamar to ten years of incarceration with nine years and 358 days of that sentence suspended with credit for seven days time served.
¶ 24. Based upon those records of convictions, the circuit court found that the prosecution proved beyond a reasonable doubt that Lamar was a "repeat offender as provided for under Section 99-19-81 in the Mississippi Code." At that point, the circuit court asked the prosecutor whether he had "any comments as to what [he thought] the Court ought to consider as punishment in the case[.]" The prosecutor answered:
Your Honor, based upon the defendant's history and the prior convictions which have been received into evidence, I don't know if the Court has any ability or room to lessen the sentence. Nonetheless, I would be satisfied if on Count One, the aggravated assault, the Court sentence the defendant to 20 years as a habitual offender and as to Count II, the *371 drug charge, I believe the minimum sentence for possession for more than one kilogram but less than five kilograms is a minimum of six years and a maximum of 24 years. The Court can fashion that sentence whatever means the Court sees best whether it is concurrent, consecutive, suspended, post-release supervision, or whatever the Court thinks is best.
The circuit court asked Lamar's attorney whether he had any thoughts on the matter. Lamar's attorney responded:
Your Honor, this relates to the recommendation just made by Mr. Kelly, I think I am going to agree with him under the 99-19-81. Based on the reading of the statute, the Court probably does not have any discretion of what that would be about 20 years. However, the Court does have discretion in the Count II and we would ask that the Court impose a minimum sentence or a supervisory sentence to run concurrent with the sentence that would be imposed in Count One.
¶ 25. After the circuit court heard comments from the prosecutor and Lamar's attorney, the following exchange between the circuit court and Lamar transpired:
The Court: Mr. Lamar, you have been found guilty of these two events by a jury. Part of my job as the trial judge is to try to follow the law and fix punishment once the jury has found guilt. My job is not quite like Mr. Draper's job, your pastor, he can forgive and forgive and forgive but under present day law, we have to take in consideration what a person's past criminal history is 
Lamar: Yes, sir.
The Court:  in fixing punishment so I don't have quite the  it is not that I don't have the heart to do so, it is the fact that the way the law is designed, we are required once a person is proven to be a habitual offender to take that into consideration at sentencing.
I do have some discretion. I don't have to sentence you as a habitual and as a repeat drug offender. I will sentence you to the 20 years required by law on the aggravated assault, that is the mandatory sentence. Probation and parol[e] will not be available.
On the marijuana, I will sentence you to six years suspended, consecutive to 20 years. As I say, I'm not going to consider  I think I have discretions [sic] whether I consider repeat drug offenses or not but I refuse to do so. I think the Section 99-19-81 which I'm compelled to follow is more than sufficient in this case.
¶ 26. The circuit court's sentencing order reflects that the circuit court sentenced Lamar to twenty years for the aggravated assault conviction. As for Lamar's drug conviction, the sentencing order indicates that Lamar was "sentenced to serve six (6) years Post-Release Supervision, § 47-7-34 as an § 99-19-81 offender . . . to run consecutive to the sentence imposed [for aggravated assault]."
¶ 27. There can be no doubt that the prosecution sufficiently proved that Lamar was a habitual offender. If a person is convicted who previously has been convicted of two other felonies, arising from separate incidents at different times, and that person had been sentenced to separate terms of one year or more for each of those two prior felonies, upon conviction of a subsequent felony, the convicted party shall be sentenced to the maximum term of imprisonment prescribed for that felony. Miss.Code Ann. § 99-19-81. Consequently, the circuit court was required to sentence Lamar to the maximum sentence for each of his convictions. However, *372 whether to run those sentences concurrently or consecutively was a matter of the court's use of sound discretion. Miss.Code Ann. § 99-19-21 (Rev.2007).
¶ 28. The sentencing range for one convicted of possession of between one and five kilograms of marijuana is imprisonment for "not less than six (6) years nor more than twenty-four (24) years and a fine of not more than Five Hundred Thousand Dollars ($500,000.00)." Miss.Code Ann. § 41-29-139(c)(2)(F) (Rev.2005). At first glance, it would appear that the circuit court was required to sentence Lamar to twenty-four years in the custody of the Mississippi Department of Corrections. However, Lamar had prior drug convictions; two before the United States District Court and one before the Panola County Circuit Court. "[A]ny person convicted of a second or subsequent offense under [the Uniform Controlled Substances Law] may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that authorized, or both." Miss.Code Ann. § 41-29-147 (Rev. 2005) (emphasis added). "[A]n offense is considered a second or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted under this article or under any statute of the United States or of any state relating to narcotic drugs, marihuana, depressant, stimulant or hallucinogenic drugs." Id. Because Lamar was a repeat drug offender under the Mississippi Uniform Controlled Substances Act and the Federal Controlled Substances Act, as well as a habitual offender, the circuit court was required to sentence Lamar to forty-eight years for possession of marijuana.
¶ 29. A feature of the circuit court's sentencing order also bears discussion. During the sentencing hearing, the circuit court stated that it was sentencing Lamar to "six years suspended" for the possession conviction. Pursuant to section 99-19-81, a habitual offender's sentence "shall not be reduced or suspended nor shall such person be eligible for parole or probation." The circuit court simply had no lawful authority to suspend any portion of Lamar's sentence. Brown v. State, 829 So.2d 93, 100(¶ 13) (Miss.2002).
¶ 30. Additionally, the circuit court had no authority to place Lamar on post-release supervision. The circuit court's sentencing order, contrary to the sentence pronounced in open court, states that Lamar was "sentenced to serve six (6) years Post-Release Supervision." It is statutorily impossible for a habitual offender's sentence to include a period of post-release supervision. As mentioned, a habitual offender must receive the maximum sentence allowable by law. However, "the total number of years of incarceration plus the total number of years of post-release supervision shall not exceed the maximum sentence authorized to be imposed by law for the felony committed." Miss.Code Ann. § 47-7-34(1) (Rev.2004). Because section 99-19-81 prohibits a sentencing court from suspending a portion of a habitual offender's sentence, it is impossible to add post-release supervision to a habitual offender's maximum sentence.
¶ 31. Our system of checks and balances dictates that the legislative branch of the government writes the laws. The Mississippi Legislature has clearly removed discretion from sentencing as to the duration of sentences in the context of habitual offenders. As a matter of public policy, the Legislature has determined that certain repeat felony offenders represent serious threats to the public safety. The Legislature requires that habitual offenders be given the maximum authorized sentence; and they may not receive a suspended sentence, probation, parole, *373 earned-time credit, nor any form of early release.
¶ 32. We, as members of the judicial branch of the government, interpret and follow the laws. We do not, and cannot, rewrite them to our liking. Circuit court judges of this state are bound by their oaths to impose lawful sentences upon convicted felons. Pursuant to Article 6, Section 155 of the Mississippi Constitution, before taking office all judges must swear or affirm, among other things, to "discharge and perform all duties incumbent upon [him or her] . . . agreeably to the Constitution of the United States and the Constitution and laws of the State of Mississippi." (Emphasis added). Lamar was a habitual and repeat drug offender when his transaction involving several pounds of marijuana went sour, and he responded by opening fire with his 9mm pistol in a Wal-Mart parking lot between the hours of 6:30 p.m. and 7:00 p.m. He had already been convicted of four serious felony offenses in slightly more than a decade. Mississippi law required that he be sentenced to forty-eight years for possession of that quantity of marijuana. Our circuit court judges must remain faithful to their oaths to follow the law when sentencing offenders.
CHANDLER, GRIFFIS AND CARLTON, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] There is no cross-appeal. Accordingly, we have no authority to remand this matter for correct sentencing.
[2] The evidence indicated that Lamar had over three kilograms of marijuana.