## JOE ROLLS VS. THE STATE.

52  391
83  699

52  391
193  779

1. CRIMINAL PRACTICE: *Impaneling jury in capital cases. Challenge.*
  Challenges to the array shall not be sustained except for fraud, and then only to special *venire* in criminal cases. Code, 1871, § 743. Exceptions to the competency of jurors will not be entertained by this court unless made in the court below. Head's case, 44 Miss., 750.

2. SAME: *Presence of the prisoner during the progress of his trial.*
  The defendant must be personally present during the progress of the trial in cases of felony, especially those that may be punished capitally. He should be present during the impaneling of the jury, the delivery of the testimony, the rendition of the verdict, the hearing of the motion for a new trial and in arrest of judgment, and when the sentence is pronounced.

3. SAME: *Effect of a reversal of a judgment of manslaughter.*
  A party convicted of manslaughter cannot, after a reversal of this judgment by an appellate court, be found guilty of murder upon a second trial.

ERROR to the Circuit Court of *Union* County.

Hon. W. D. BRADFORD, Judge.

The opinion of the court contains a sufficient statement of the case, to give a full understanding of the principles announced.

It is assigned for error :

1. The record does not show that the jury were of the county in which the killing was done.

2. The court erred in overruling defendant's motion in arrest of judgment.

3. In overruling defendant's motion for a new trial.

4. In overruling defendant's motion to set aside the judgment and sentence.

5. The record does not show that defendant was present in court when his motion to set aside the judgment and sentence was disposed of.

*Thomas A. McWillie*, for plaintiff in error :

It does not appear that the jury who tried the case were of the county where the offense is alleged to have been committed.

See Const., art. 1, § 7. The record must show it affirma-

-tively; no presumption can be indulged. Carpenter *v.* The State, 4 How., 167; Dyson's case, 4 Cushman, 362.

The record does not show that the prisoner was in court when his motion to set aside the judgment and sentence was disposed of. This is fatal, as has been repeatedly held by this and other courts. See Dyson *v.* The State, 4 Cushman, 362; Scragg's case, 8 S. & M., 722; Price's case, 36 Miss., 531; Gaiter's case, 45 ib., 441; Stubb's case, 49 ib., 720.

The court erred in overruling the motion to set aside the judgment and sentence. The verdict is as follows: " We, the undersigned jurors, find the defendant guilty of *manslater*." The law, it is true, empowers the judge to interrogate the jury to ascertain what verdict it is they desire to render, but neither the judge nor the clerk's entry on the minutes can vitalize a verdict. The verdict is an absolute nullity. See 1 Bish. Cr. Pr., § 842.

*M. Green*, on the same side:

The motion in arrest of judgment should have been sustained. The ground of the motion was that defendant was guilty of murder, or nothing. The 3d assignment is that the verdict was contrary to law and evidence. These two may be considered together. There are two theories: 1st, the act was deliberate murder; or, 2d, that it was justifiable homicide; and in either case the verdict would be wrong. Accused, after a a little quarrel, went off 200 yards to his house and returned with his shot-gun and advanced towards deceased, who did not move, and when near him, without an overt act on the part of deceased, shot him down.

Emeline Vaughan says that defendant said, just before the shooting, if he did not kill deceased that evening he would kill him to-morrow. If this be true he is guilty of murder, and not manslaughter.

The jury did not adopt this theory. The only other theory is that defendant got his gun to protect himself, and when deceased advanced on him with a knife, which was found by

his body, defendant retreated until deceased was getting so close to him that in a moment his gun would have been useless, then fired. Under this view he was justifiable. But the jury did not act on this theory, and, in either view of the case, the verdict is wrong.

*G. E. Harris*, Attorney General, for the State:

The record shows that the jury were "good and lawful men," and that their names were drawn from the lawful jury-box, prepared under Code, 1871, §§ 736, 737. It is not necessary that the record should specify every particular qualification possessed by each juror. The mode prescribed for impaneling the jury is merely directory. Code, 1871, § 2843. Challenges to the array can only be sustained for fraud. Code, 1871, § 743. No exceptions were taken in the court below; and it is too late to raise the question here for the first time.

There can be nothing in the merely technical objection that the jury spelled a word wrong — "manslater" for "manslaughter." Was the accused present at every important step in the trial of his case? This was necessary, but I submit that the record shows that he was. If the record failed to show his presence at the trial, or when sentenced, it would be ground for reversal. 3 S. & M., 528; 1 Chit. Crim. L., 692; 12 Wend., 344; 7 Cow., 525.

But his absence when a motion is overruled to quash a special *venire facias* is not ground for reversal. 3 S. & M., *supra*.

As to the sufficiency of the testimony, take the most favorable view in which the testimony for the defense places it, and it was manslaughter at least.

*No man can seek a quarrel, provoke a difficulty, or bring on a combat, and take the life of his adversary, and then justify the act on the ground of necessary self-defense.*

SIMRALL, C. J., delivered the opinion of the court.

The assignments of error present these propositions:

1. Whether the jury that tried plaintiff in error, and found him guilty of manslaughter, was, in the sense of the law, a good and lawful jury, properly impaneled and sworn?

2. Was the prisoner present in court during the progress of the trial?

3. Was the verdict warranted by the testimony?

4. Were the instructions for the state applicable to the facts, and do they announce correct propositions of law?

5. Ought the motion in arrest of judgment to have been overruled?

6. Was it error to refuse to set aside the judgment and sentence?

The first assignment is not sustained by the record. It shows that, on the application of the defendant, the clerk and sheriff of Union county drew, in open court, from the jury-box, seventy-five names, to constitute a special *venire*; that the writ of *venire facias*, including those names, was issued, and returned by the sheriff, and that the jury was made up from the persons so summoned, and from the regular panel, who are declared to be good and lawful men. No exception was taken to the special *venire*, nor to the mode of impaneling the jury, nor to the qualifications of its members, or of any of them.

All the members of the jury were of the names drawn from the box, as constituted under § 736 of the Code, which is a list of "all persons in the county qualified to serve as jurors." Challenges to the array shall not be sustained except for fraud, and then only to a special *venire* in a criminal case. Section 743.

It would follow from these sections that, inasmuch as no objection was taken to the special *venire*, it was good, and that the persons summoned were subject to jury service. And since no exception was taken to the individual members of the petit jury, and since it was the privilege of the defendant to challenge for cause and peremptorily, and the duty of the court to see that a competent jury was selected, we cannot

entertain objections for this, in the appellate court, not made below.   See White *v.* The State (MSS.), decided at this term ; Head's case, 44 Miss., 750 ; Durrah's case, ib., 789.

It affirmatively appears from the record that the defendant was in court during the entire course of his trial by the traverse jury, and when the motion in arrest of judgment and for a new trial was made and determined.   He was in court when the sentence was passed.   The record is silent, however,. whether he was present or not when his motion to set aside the judgment and sentence, which had already been pro-- nounced, was determined.   It states, however, that in person he made the motion.

It has been repeatedly held that the defendant must be personally present during the progress of the trial in cases of felonies, especially those that may be punished capitally. Scraggs' case, 8 S. & M., 726 ; Price's case, 36 Miss., 542. The cases go to the point that, if in custody, he must be present during the jury trial, the return of the verdict into court, and when judgment is pronounced.   It is not so well set-- tled that questions purely of law, such as in arrest of judgment,. etc., may not be heard and decided in his absence.   Stubbs' case, 49 Miss., 722.

In Jewell's case, 22 Penn. St., 94, it was expressly held that his counsel may make, and the court may dispose of, a. motion for a new trial.

Mr. Bishop states, on reason, that there can be no objection to the agitation of a mere question of law in the defendant's. absence.   Crim. Pro., § 692.   In Price's case, 36 Miss., *supra*, the verdict delivered in the absence of the prisoner was sus-- tained, he being *voluntarily* absent.

In Hooker's case, 13 Gratt., the rule is said to be that, the prisoner must be present, not only when the jury are hear-- ing the case, but at every subsequent stage when anything may be done in the prosecution by which he may be affected. ·

Sperry's case, 9 Leigh (Va.), 626, would seem to indicate. that if the defendant, in person, made a motion, that would be.

sufficient evidence of his presence. In Kelly and Little's case, 3 S..& M., 518, the motion to quash the *venire facias* was made in the prisoner's absence, and that was held to be proper.

We think the deduction from our own decisions, and the rule of safety, is to require the presence of the prisoner in all material and important steps taken during the progress of the cause. Of these are attendance during the impaneling of the jury, the delivery of the testimony, the rendition of the verdict, and the hearing of a motion for a new trial and in arrest of judgment, and when the sentence is pronounced.

It is shown that the defendant was in court at the hearing of the motion in arrest of judgment. That motion assigned but one cause, which could not be entertained and could not arise in that form of proceeding. But we think when the court is brought to the consideration of the motion, necessarily is brought into review the entire record, such as the organization of the court, the preferment of the indictment in due and legal form, the presence of the defendant during the trial— indeed, all those matters which go to the validity of the proceedings, and which could be assigned as error in this court.

If, therefore, a retrospect of the record discloses any defect in it which is a sufficient reason in law why the judgment should not be pronounced, and which would be ground of reversal in this court, the defendant is entitled to the benefit of it, whether specifically set forth in the motion or not.

It would follow from these premises that the defendant was present when every step in the cause was taken, involving his interest and safety.

The ground of the motion to set aside the judgment for the misspelling the word manslaughter, by the jury who wrote the verdict, is frivolous. Neither bad spelling nor bad grammar vitiates legal proceedings. The practice does not require that the jury in a criminal case shall reduce their verdict to writing, but on their return into court they respond to the inquiry of the clerk or court as to their verdict—guilty or not guilty, or guilty of manslaughter—and the clerk records the verdict.

But the trial closed with the judgment and sentence. The motions in arrest of judgment and for a new trial preceded the sentence. That was the closing, final act of the trial.

But, further, if there could be anything of substance n this motion, the record shows that it was made and signed by the defendant in person, and was at the same time—that is, on the same day—disposed of. It is difficult to conceive that whilst an actor in this, in open court, personally, he was nevertheless not present. We do not think that this assignment of error is tenable.

After a careful consideration of the instructions given for the state we do not think that they are erroneous. The counsel for plaintiff in error makes no objection to them. Nor is there any merit in the proposition that the testimony proves the defendant guilty of murder, and therefore the verdict was wrong.

The jury acquit of murder. If we should reverse the judgment the defendant could not, on a second trial, however clear and conclusive the evidence, be convicted of murder.

There might be something in the point if a reversal for that reason would put the defendant on a second trial to answer for the crime of murder. But, if really guilty of murder, it is not quite clear that the plaintiff in error has been prejudiced by the failure of the jury to find him guilty of that crime.