**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 98-KA-00130-SCT**

*DAVID L. DAVIS a/k/a DAVID LATRELL DAVIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/19/1997 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HERMAN F. COX |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/29/2000 |
| MOTION FOR REHEARING FILED: | 7/12/2000; denied 10/5/2000 |
| MANDATE ISSUED: | 10/12/2000 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. David Latrell Davis was indicted for capital murder while in the commission of the crime of robbery and tried in the Jackson County Circuit Court. The jury found Davis guilty of capital murder and sentenced him to life in prison without parole. Aggrieved, Davis appealed to this Court.

**STATEMENT OF THE FACTS**

¶2. On the night of September 18, 1996, Elsie McCorvey was working the 10:30 p.m. until 6:00 a.m. shift at the Circle K convenience store in Pascagoula, Mississippi. Sometime after midnight that night, after drinking alcohol and smoking marijuana with Robert Evans, Andrea Smith and others earlier in the day, Davis went to the home of Vincent Jenkins. Jenkins was keeping a shotgun for Andrea Smith, and Davis said he wanted the gun. When Jenkins refused to give him the gun, Davis made threatening remarks, and Smith called out to Jenkins to give the gun to Davis. Davis then took the gun, returned to the car where Evans had waited, and they drove to the Circle K where McCorvey was working. Davis and Evans entered the store, and Davis carried the shotgun to the counter and shot McCorvey in the chest. After trying unsuccessfully to open the cash register, Davis walked around behind the counter and took the cash register and its contents. McCorvey died only a few minutes after being shot by Davis. Davis, identified from the store video camera, was indicted, tried and found guilty of capital murder committed while in the

commission of robbery. He was sentenced to life in prison without parole. He appealed to this Court raising the following issues, which are here quoted verbatim:

>**I. THE TRIAL COURT ERRED IN IMPANELING THE JURY WHICH WAS DRAWN BY A SPECIAL VENIRE AND IN EXCUSING TWENTY-EIGHT JURORS OUTSIDE THE PRESENCE OF THE DEFENDANT AND COUNSEL FOR THE DEFENDANT.**

>**II. THE TRIAL COURT ERRED IN DENYING THE MOTION FOR CHANGE OF VENUE MADE ON BEHALF OF THE DEFENDANT**

>**III. IT WAS ERROR FOR THE TRIAL COURT TO RULE THAT JURORS 5, 10, 15, AND 42 WHO WERE PEREMPTORILY STRUCK BY THE STATE WERE DONE FOR RACIALLY NEUTRAL REASONS.**

>**IV. THE TRIAL COURT ERRED IN NOT ALLOWING INTO EVIDENCE DURING THE GUILT PHASE THE TWO VIDEO STATEMENTS OF THE DEFENDANT TAKEN BY THE POLICE AUTHORITIES.**

>**V. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION IN LIMINE PERTAINING TO CERTAIN EXPECTED TESTIMONY OF THE STATE'S WITNESS, VINCENT JENKINS, AND IN ALLOWING THIS WITNESS FOR THE STATE TO TESTIFY CONCERNING THREATS MADE BY THE DEFENDANT TO HIM.**

>**VI. THE DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT OF EFFECTIVE ASSISTANCE OF COUNSEL.**

Finding no reversible error, we affirm.

## DISCUSSION

>**I. THE TRIAL COURT ERRED IN IMPANELING THE JURY WHICH WAS DRAWN BY A SPECIAL VENIRE AND IN EXCUSING TWENTY-EIGHT JURORS OUTSIDE THE PRESENCE OF THE DEFENDANT AND COUNSEL FOR THE DEFENDANT.**

¶3. Davis argued that the trial judge excused some twenty-eight[1] members of the special venire before he or his counsel were present and thus the trial judge should have quashed the entire jury panel. Citing *Strickland v. State*, 477 So. 2d 1347 (Miss. 1985), Davis argues that he had an absolute right to be present during the impaneling of the jury. His reliance on *Strickland* is misplaced, however. The trial judge in *Strickland* was notified "during pretrial proceedings" that a prospective juror had been contacted by a friend of the defendant. The judge then conducted an in-chambers examination of apparently each prospective juror, outside the presence of the defendant or the attorneys for either side, to determine the extent of the contact. Three prospective jurors were extensively questioned by the judge when they indicated they had been contacted by someone who attempted to influence them in favor of the defendant. Two other prospective jurors indicated that the sheriff or his deputies had come to their homes the night before, but the judge did not question them further. One of the jurors contacted by the state ultimately served as jury foreman. *Id.* at 1348-49. Finding that this was a perfect example of the injustice which can result when the defendant or his counsel is excluded from a critical stage in the trial proceedings, this Court

properly reversed and remanded.

¶4. The facts in *Strickland,* however, are in stark contrast to the situation before us in the present case. Here Davis was absent only during the routine statutory qualification of the prospective jurors. He was present when the State and defense counsel announced "ready" and the trial judge's voir dire of the prospective jurors began and for the remainder of the trial.

¶5. In the present case, the record reflects that the customary procedure of the Jackson County Circuit Court is to begin the qualifying process for a special venire at 7:45 a.m. , even though the docket reflects that court starts at 9:00 a.m. When defense counsel arrived at approximately 8:05 a.m., the judge had already begun the process of explaining the court procedures, introducing various court personnel, swearing the prospective jurors, and going through the general qualifying procedures. After explaining the qualifying process, the trial judge methodically asked the full venire the routine questions regarding age, residency, prior convictions, illness, hardships, etc. pursuant to Miss. Code Ann. §§ 13-5-1, -23 & -25 (1972 & Supp. 1999). The prospective jurors who were excused by the trial judge during this qualifying process included one who was not a resident of Jackson County; fourteen who had various illnesses and medical excuses; one who had an ill family member; three who were over 65 years of age; seven for serious financial or business hardships; and eight for other reasons including a death in the family and students and teachers required to be in class.

¶6. The record is not clear as to the exact point at which defense counsel arrived, but he made no objection at the time, and apparently was present in the courtroom throughout most of the jury qualification process. After a brief break at the conclusion of the qualifying process the judge, Davis's counsel, and the prosecutors returned, and Davis was brought into the courtroom. Before the drawing of the names of prospective jurors who would be considered further by counsel for the parties, defense counsel moved to quash the jury panel, based on his initial absence and the absence of Davis during the jury qualification and excusal process. The judge denied the motion, and the drawing of the jury began.

¶7. In *Chase v. State*, 699 So. 2d 521, 534 (Miss. 1997) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667, 96 L.Ed.2d 631 (1987)) this Court stated that "a criminal defendant 'is guaranteed the right to be present at any stage of the criminal proceedings that is critical to its outcome if his presence would contribute to the fairness of the procedure.'" As early as 1876 this Court recognized that a defendant had a right to be present during the impaneling of a jury, stating: "We think the deduction from our own decisions, and the rule of safety, is to require the presence of the prisoner in all material and important steps taken during the progress of the cause. Of these are attendance during the impaneling of the jury . . . ."*Rolls v. State*, 52 Miss. 391, 396 (1876). In *Lewis v. United States*, 146 U.S. 370, 374, 13 S. Ct. 136,137, 36 L.Ed.1011 (1892), the Supreme Court affirmed that voir dire is a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present, writing "where the indictment is for a felony, the trial commences at least from the time when the work of empaneling the jury begins." See *Gomez v. United States*, 490 U.S. 858, 873, 109 S. Ct. 2237, 2246, 104 L.Ed.2d 923 (1989). See also *Simmons v. State*, 746 So. 2d 302, 308 (Miss. 1999), in which we stated "Voir dire is considered by this Court as "a most critical stage" of the criminal proceedings.[(2)]

¶8. Davis contends that the trial court "impaneled the jury and began general voir dire of the jury and excused twenty-eight jurors" while Davis was not present. In actuality all that happened in his absence was the statutory qualifying process, during which the trial judge ascertained which, if any, of the prospective

jurors should be excused or exempt based on the factors set forth in Miss. Code Ann. §§ 13-5-1, -23, & -25 (1972 & Supp. 1999).

¶9. A review of the terminology used throughout the sections found in Miss. Code Ann., Title 13, Chapter 5, as well as many cases involving jury issues, reveals a definite lack of precision. Does "impaneling of the jury" begin when the prospective jurors report for duty and continue until those actually chosen to serve are sworn, seated and testimony begins? Or does it begin only after completion of the statutory qualifying process, when those disqualified or exempt have been excused and the questioning begins of the remaining prospective jurors by the court and the attorneys for each side? Does "voir dire" include the trial judge's questions regarding qualifications and exemptions, or only the questions asked of the qualified prospective jurors who remain after others are excused for statutory reasons?

¶10. Today we adopt a bright line rule that the trial judge's general questioning of prospective jurors, to ascertain those who are qualified for, or exempt from, jury service is not a critical stage of the criminal proceedings during which a criminal defendant is guaranteed a right to be present. Such statutory matters as whether a prospective juror is a resident of the county, is ill or has an illness in the family, or is over 65 years of age are not matters which necessitate a defendant's presence. A defendant may choose to be present during this part of the proceedings, but has no guaranteed right to be present.

¶11. Regardless of whether it is called "impaneling the jury" or "voir dire" or otherwise, the critical stage of jury selection begins at the time when the trial judge and counsel for the parties begin questioning the qualified prospective jurors about such matters as whether they know or are related to the defendant or the attorneys, know or have read about the case, and any other matters specific to the particular case such as opposition to the death penalty or hardship which sequestration might cause.

¶12. Davis's right to be present during the critical stages of his trial has not been violated due to his absence, and the partial absence of his attorney, during the qualifying of the prospective jurors. This issue is without merit.

## II. THE TRIAL COURT ERRED IN DENYING THE MOTION FOR CHANGE OF VENUE MADE ON BEHALF OF THE DEFENDANT

¶13. Davis argued that pre-trial publicity had prejudiced several of the jurors and thus the trial court was in error when it denied his motion for a change of venue. The State argued that Davis failed to follow the statutory requirements for a change of venue and alternatively, any jurors that had been prejudiced were excused and the two that were not excused were accepted by Davis.

¶14. The record reflects that after voir dire, Davis moved to quash the jury panel due to pre-trial publicity. Numerous prospective jurors had read an article about the case in the local newspaper the day before the trial was to commence. Many had read newspaper accounts or seen clips of the video on TV when the shooting and robbery occurred the previous year. However, each prospective juror who responded affirmatively about seeing or hearing about the case was individually voir dired, and the trial judge allowed defense counsel and prosecution alike to question each one as extensively as desired. The judge also asked the individual jurors if the publicity would influence their decision and admonished them to disregard anything they might remember from the publicity. The trial judge denied defense counsel's motion to quash, finding that the pre-trial publicity was not sufficiently prejudicial to require him to quash the entire panel and pointing out that Davis could strike for cause those who may have formed an opinion. Davis then moved for

a change of venue under URCCC 6.06 which was also was denied.

¶15. A motion for a change of venue is not automatically granted in a capital case and is largely a matter within the sound discretion of the trial court. *Gray v. State*, 728 So.2d 36, 65 (Miss. 1998). A judgment of conviction will not be reversed on appeal on the ground that a change of venue was refused, unless it clearly appears that the trial court abused its discretion. *Id*. A motion for a change of venue "must be in writing and supported by affidavits of two or more credible persons showing that the defendant cannot receive an impartial and fair trial in that particular county because of prejudgment of the case or grudge or ill will to the defendant in the mind of the public." *Hoops v. State*, 681 So.2d 521, 526 (Miss. 1996) (citing Miss.Code Ann. § 99-15-35 (1994). Had affidavits been submitted by Davis, there would be a rebuttable presumption that an impartial jury could not be impaneled and the prosecution would be charged with rebutting that presumption. *Morgan v. State*, 681 So.2d 82, 91 (Miss. 1996).

¶16. The State argued correctly that Davis did not follow the statutory guidelines in making a motion for a change of venue. Assuming arguendo that the motion for change of venue was proper, the trial court's ruling should still be affirmed. In *White v. State*, 495 So.2d 1346, 1348 (Miss. 1986), there had been a series of stories in the local paper concerning a string of unsolved rapes. White, who was convicted of forcible rape, was named as a suspect in the articles. *Id*. at 1348. White's motion for a change of venue was denied. This Court affirmed. In *White*, only ten (10) potential jurors indicated that they had heard anything about this particular case and only three, who indicated that they had been aware of any media coverage, were returned on the final jury. *Id*. All prospective jurors said that they would not be affected by what they had been exposed to and would be able to render a fair and impartial verdict. *Id*. "A fair trial is, after all, the reason we have our system of justice; it is a paramount distinction between free and totalitarian societies." *Johnson v. State*, 476 So.2d 1195, 1209 (Miss. 1985). "It is fundamental and essential to our form of government that all persons charged with a crime have the right to a fair trial by an impartial jury." *White*, 495 So.2d at 1348. "Mississippi law on the subject of change of venue has been primarily summarized in the cases of *Cabello v. State*, 490 So.2d 852 (Miss.1986); *Wiley v. State*, 484 So.2d 339 (Miss.1986); *Fisher v. State*, 481 So.2d 203 (Miss.1985); *Johnson v. State*, 476 So.2d 1195 (Miss.1985); and the cases incorporated therein." *White*, 495 So.2d at 1348. These cases focus on the presence of extraordinary and intensely prejudicial pretrial publicity. The accused has a right to a change of venue when it is doubtful that an impartial jury can be obtained. *Id*. "[U]pon proper application, there arises a presumption that such sentiment exists; and, the State then bears the burden of rebutting that presumption." *Id*. "While the presumption may be rebutted during voir dire, in some circumstances pretrial publicity can be so damaging and the presumption so great, that no voir dire can rebut it." *Id*. (citing *Johnson*, 476 So.2d at 1211). "We have set forth certain elements which, when present would serve as an indicator to the trial court as to when the presumption is irrefutable." *Id*. These elements are:

(1) Capital cases based on considerations of a heightened standard of review;

(2) Crowds threatening violence towards the accused;

(3) An inordinate amount of media coverage, particularly in cases of

a) serious crimes against influential families;

b) serious crimes against public officials;

c) serial crimes;

d) crimes committed by a black defendant upon a white victim;

e) where there is an inexperienced trial counsel.

*Baldwin v. State*, 732 So.2d 236, 241 (Miss. 1999).

¶17. Applying these elements to the instant case, it is clear that Davis cannot claim that the presumption of prejudice here is irrefutable. The publicity in question cannot be described as "inordinate," especially when compared to *White*. Here, there was an article in the paper in September of 1996, and an article in the paper the day before trial as well as news reports on radio and television. In denying the motion to quash the venire, the trial judge stated that "it's remarkable that most of the people had formed no such opinions and knew very little about the case, really, from a factual standpoint." "And to the contrary, it seems that the great majority of the people on this panel would be fair and impartial, or stated that they could."

¶18. In the case sub judice, the article in the paper was not as damaging as the articles published in *White*, *Johnson* and *Fisher*. This Court has stated that when the news media have heavily reported a case, the lower courts should be prepared to change venue. *Johnson*, 476 So.2d at 1215. However, as in *Gray*, this case was not "saturated with publicity" as was the case in *Fisher* and *Johnson*. *Gray v. State*, 728 So.2d at 65. (*Gray* had 11 articles; *Fisher* and *Johnson* each had over 60 articles). The venire was questioned as to their ability to make a decision based on the evidence, the law and if they had prejudged the case as to guilt or innocence. Individual voir dire was conducted with those potential jurors who had read the news articles. The record indicates that the impaneled jury members affirmatively stated that they could fairly and impartially serve as jurors. We have faith that trial judges are ever mindful of the fact that "when faced with a case which has been heavily reported in the news media, our trial courts must be prepared to readily grant a change of venue." *Johnson*, 476 So.2d at 1214. "Judicial efficiency and economy would be better served by a fair trial initially." *Id*. "The fair way is the safe way, and the safe way is the best way in every criminal prosecution." *Id*. While there was some publicity in the case sub judice, there was not enough to prejudice the defendant such that he could not receive a fair trial. The trial judge took the necessary steps to insure that the defendant's right to a fair trial was preserved. There is nothing to indicate that the jurors were not fair and impartial. "Where ... the evidence is conflicting on the question of whether or not the defendant could receive a fair and impartial trial, this Court will generally defer to the considered opinion of the trial judge." *Burrell v. State*, 613 So.2d 1186, 1190 (Miss.1993). The trial judge did not abuse his discretion on this issue.

### III. IT WAS ERROR FOR THE TRIAL COURT TO RULE THAT JURORS 5, 10, 15, AND 42 WHO WERE PEREMPTORILY STRUCK BY THE STATE WERE DONE FOR RACIALLY NEUTRAL REASONS.

¶19. After both sides had made their strikes for cause, the State proceeded with its peremptory strikes, initially leaving two black jurors on the panel and striking three. Davis is a black male, and he objected to the State's striking the three black jurors, and interposed a challenge based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). The State cited its acceptance of the other two black jurors, and argued that the defense had failed to prove a prima facie case or a systematic exclusion of blacks. However, without waiting for a ruling by the trial court, the State proceeded to give race-neutral reasons for its strikes of the three black jurors, as follows: juror no. 5 was familiar with Davis's family, and

also had a brother in prison; juror no. 10 was opposed to the death penalty on religious grounds and he knew people who were relatives or friends of Davis; and juror no. 15 lived in close proximity to the Davis's mother, although defense counsel contended they lived in different towns. There was much discussion among counsel and the judge about the variances in the information and understanding each side had about juror number 15,[(3)] but the court found the State's reasons for all three strikes to be race-neutral. The State subsequently interposed a *Batson* challenge to Davis's strikes against three white jurors, and the judge, after hearing reasons from defense counsel, found the strikes against the white jurors also to be race-neutral.

¶20. After selection of ten of the twelve jurors was completed, Davis interposed another *Batson* challenge when the State struck juror no. 42. As the reason for the strike, the assistant district attorney explained: "That lady never would look at [the district attorney]. No eye contact. Just absolutely would not pay any attention to what he said. It was a horrendous situation." After further discussion among counsel, the assistant DA stated: "I watched her, and she wasn't paying a bit of attention to [the district attorney] when he was questioning the jury". The judge found this to be a race-neutral and sufficient reason to strike juror no. 42.

¶21. "On review, the trial court's determinations under *Batson* are afforded great deference because they are, in large part, based on credibility." *McGilberry v. State*, 741 So.2d 894, 923 (Miss. 1999) (citing *Coleman v. State*, 697 So.2d 777, 785 (Miss.1997)). "This Court will not reverse any factual findings relating to a *Batson* challenge unless they are clearly erroneous." *Id*.

¶22. Davis alleges that the State made its strikes on the basis of race. The trial court examined the reasons given by the proponent, made on-the-record factual inquiry and determinations, and found the reasons for the strikes to be sufficient to meet the *Batson* challenges. In *Davis v. State*, 660 So.2d 1228, 1242 (Miss. 1995), this Court reiterated a list of reasons accepted as race neutral. "Included among those reasons: age, demeanor, marital status, single with children, prosecutor distrusted juror, educational background, employment history, criminal record, young and single, friend charged with crime, unemployed with no roots in community, posture and demeanor indicated juror was hostile to being in court, juror was late, short term employment." *Id*. We have also condoned a peremptory challenge against a juror who was acquainted with the defendant's family. *Manning v. State*, 735 So.2d 323, 340 (Miss. 1999). We have accepted demeanor as a legitimate, race-neutral basis for a peremptory challenge. *Walker v. State*, 671 So.2d 581, 628 (Miss. 1995). We will not reverse a trial judge's factual findings on this issue unless they appear clearly erroneous or against the overwhelming weight of the evidence. *Walters v. State*, 720 So.2d 856, 865 (Miss. 1998). Based on this record, the trial court's findings on Davis's challenges are not clearly erroneous nor against the weight of the evidence. This issue is without merit.

### IV. THE TRIAL COURT ERRED IN NOT ALLOWING INTO EVIDENCE DURING THE GUILT PHASE THE TWO VIDEO STATEMENTS OF THE DEFENDANT TAKEN BY THE POLICE AUTHORITIES.

¶23. Davis gave two videotaped statements to the police after his arrest, and the tapes contained certain admissions he made to police regarding the robbery and shooting. Davis argued that these tapes should have been allowed in evidence during the guilt phase of the trial, citing *Sanders v. State*, 237 Miss. 772, 115 So.2d 145 (1959). The State argued that the evidence was inadmissible hearsay and thus the trial judge did not abuse his discretion by excluding the statements in the videotapes, citing *Harris v. State*, 731 So.2d 1125 (Miss. 1999).

¶24. "Under this Court's standard of review, the admissibility of evidence rests within the trial court's discretion."*Hall v. State*, 611 So.2d 915, 917 (Miss. 1992). "Unless his judicial discretion is abused, this Court will not reverse his ruling." *Id*. "This Court has held that the same standards used in determining the admissibility of photographs are applicable to the admission of videotapes." *Walters*, 720 So.2d at 861. The trial judge must also consider Rule 403 of the Mississippi Rules of Evidence in determining the admissibility of relevant evidence which "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id*. at 861.

¶25. The record revealed that the State made a motion in limine to exclude the videotapes for two reasons: 1) if the defendant did not testify, then the admission of the tapes would allow the defendant to give his version of the events without being cross-examined; and 2) if the defendant did testify the tapes would be bolstering. The court sustained the State's motion, ruling that "as a general proposition, you cannot get the defendant's statement into evidence, if he doesn't testify, by the tape or by cross examination of the officers as to what he said." However, the court left open the possibility of Davis later renewing his request to have the videotapes admitted into evidence, stating: "[W]ell, I don't know where you may be wanting to go with this and I'm not sure that you do either at this point, so I'll let you, if it's a fuzzy area that we get into that is not clear, then bring it up outside the presence of the jury."

¶26. "Evidence inadmissible for one purpose may be relevant and competent for another." *Thorson v. State*, 653 So.2d 876, 889 (Miss. 1994). "And, a trial judge should not be faulted for refusing to rule in advance how he will rule when he does not, indeed cannot, know the context in which evidence will be offered."*Id*.

¶27. The trial judge left open the possibility of introducing the evidence at some point in the trial where an exception might occur. At the time the motion in limine was before the judge the defense was not sure if Davis would take the stand. In the case sub judice, the trial judge did not abuse his discretion by excluding the videotapes at this particular point in the trial. *Thibodeaux v. State*, 652 So.2d 153, 170 (Miss. 1995). This issue is without merit.

### V. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION IN LIMINE PERTAINING TO CERTAIN EXPECTED TESTIMONY OF THE STATE'S WITNESS, VINCENT JENKINS, AND IN ALLOWING THIS WITNESS FOR THE STATE TO TESTIFY CONCERNING THREATS MADE BY THE DEFENDANT TO HIM.

¶28. Davis claims the trial judge committed reversible error by admitting evidence that Davis threatened to "shoot up" Jenkins's apartment if Jenkins did not give the shotgun to him. Davis argues that the evidence was highly prejudicial and not probative on any relevant issue citing *Cabello v. State*, 490 So.2d 852 (Miss. 1986) (evidence of crimes other than the one for which the accused is on trial is not admissible in a criminal prosecution). The State argued that the evidence proved Davis's motive, intent and possession of a shotgun, a short time before the robbery and murder, citing *Williams v. State*, 590 So.2d 1374, 1379 (Miss. 1991) (State has burden of proving robbery); and M.R.E. 404(b), which allows admission of other crimes, wrongs, or acts to prove motive, opportunity, intent, preparation, plan, and other purposes.

¶29. The record revealed that counsel for the defense made a motion in limine to prohibit Jenkins from testifying that Davis had threatened to "shoot his place up on this particular occasion if a certain weapon

was not released" since that did not show plan, motive, absence of mistake, or a common scheme concerning what the defendant was going to do fifteen minutes later. The trial judge denied the motion, ruling that the evidence was relevant and the probative value would outweigh any prejudicial effect.

¶30. Evidence of other crimes is admissible when such evidence tends to establish or explain the motive for the crime with which the defendant is charged, particularly in cases involving circumstantial evidence. *Ladner v. State*, 197 So.2d 257, 264 (Miss. 1967). "If prior bad acts evidence falls within a 404(b) exception, its prejudicial effect must still be weighed against its probative value to determine admissibility under Miss. R. Evid. 403." *Underwood v. State*, 708 So.2d 18, 31 (Miss. 1998). The judge made the appropriate findings. The gun was obtained prior to the murder. Davis was convicted of capital murder while in the commission of the crime and felony of robbery. Evidence that he obtained a gun by threatening the person who had the gun was relevant to show motive and intent to commit the crime. As the State correctly argued, these actions also show state of mind of the defendant prior to the robbery and murder. These are clearly exceptions that fall within M.R.E. 404(b). This issue is without merit.

## VI. THE DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT OF EFFECTIVE ASSISTANCE OF COUNSEL.

¶31. A claim of ineffectiveness of counsel begins with the fundamental concepts that the defendant: (1) had a right to counsel, (2) that his right to counsel encompassed the right to reasonably effective assistance of counsel, and (3) that the right to effective assistance of counsel attached at both the guilt phase and sentencing phase of his trial. *King v. State*, 503 So.2d 271, 273 (Miss. 1987). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Foster v. State*, 687 So.2d 1124, 1129 (Miss. 1996). The defendant must establish two elements in order to prevail in this claim. First, he must show that his counsel's performance was so deficient that he was not performing as counsel guaranteed by the Sixth Amendment. Second, he must prove that counsel's errors were so serious as to deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984); *Foster,* 687 So.2d at 1129. Both showings must be made or there is no claim that a breakdown in the adversary process has occurred such that the result is unreliable. *Id*. This Court will review all circumstances in order to determine whether counsel's assistance was reasonable. *Id*. at 1129-30. There is a presumption that defense counsel is competent. *Id*. at 1130. We will evaluate counsel's actions from his perspective at the time he took those actions. *King*, 503 So.2d at 273. It must be determined that but for the counsel's unprofessional errors it can be shown to a reasonable probability that the result of the proceeding would have been different. *Foster*, 687 So.2d at 1130. There is no constitutional right to errorless counsel, just to effective, competent counsel. Both prongs of the test must be satisfied. *Id*.

### 1.Trial Counsel's Failure to Object to Certain Testimony

¶32. State's witness Beverly Smith testified that she and the defendant and other individuals had consumed a lot of alcohol and some marijuana during the early afternoon of the day before the murder. (The murder occurred after midnight). Defense counsel did not object. On cross-examination, counsel for the defense questioned Smith as to how much liquor and marijuana was purchased and consumed. Davis argued that this evidence was highly prejudicial and that defense counsel should have objected, citing *Eubanks v . State*, 419 So.2d 1330 (Miss. 1982) (proof of a crime distinct from that alleged in the indictment should

not be admitted into evidence against the accused). The State responded by pointing out that Davis's theory of the case was that he did not have the requisite intent to commit the crime because he had been under the influence of drugs.

¶33. The record revealed that Davis admitted this statement "not as hearsay, but to show the effect that it had on this 17-18 -year-old kid who was obviously intoxicated and possibly high on some sort of controlled substance, and that's the reason that we offer this particular piece of evidence." It cannot be shown that counsel for the defense was in error by allowing the testimony of Smith to be admitted. The record revealed the trial strategy of Davis. The testimony supported this theory. Counsel's performance was not deficient such that he was not performing as counsel guaranteed by the Sixth Amendment. Thus, we need not address the second prong of *Strickland*. This issue is without merit.

## 2. Trial Counsel Failed to Object to Improper Remarks

## Made by Counsel for the State

¶34. Davis argued that defense counsel should have objected to comments made by the State during closing argument in the guilt phase where the State made the following remarks:

> But I didn't hear an argument from Mr. Shaddock [Davis's trial attorney] that it wasn't him on the videotape. I didn't hear any evidence or an argument from Mr. Shaddock that he was in another place at the time of the commission of this homicide. I didn't hear that argument.

Davis argued that these statements were comments by the State on Davis's failure to testify at the guilt phase of the trial, citing *West v. State*, 485 So.2d 681 (Miss. 1985). The State submitted that the statement was merely argument to the jury concerning what the facts were in order for the jury to make a decision. The State was explaining that Davis did not contest certain facts and the reason the defense did not object was because the other evidence clearly proved Davis was at the scene of the crime during the actual commitment of the crime as evidenced by the video.

¶35. "A direct comment on a defendant's failure to testify is not allowed under Mississippi law and constitutes reversible error." *McGilberry*, 741 So.2d at 907. "Reference to a defendant's failure to testify by innuendo and insinuation is also forbidden." *Id*. "Balanced against the rights of the defendant, however, is the rule that lawyers are given broad latitude in their closing arguments." *Id*. "Thus, although a direct comment on the defendant's right to testify is forbidden, all other comments must be examined on a case-by-case basis." *Id*. "There is a distinction between a comment on the failure to testify and a comment on the failure to put on a successful defense." *Id*. "Not every comment regarding the lack of any defense or upon the defense presented is equivalent to a comment on the defendant's failure to testify." *Id*. at 908. "[T]he State is entitled to comment on the lack of any defense, and such a comment will not be construed as a reference to a defendant's failure to testify by innuendo and insinuation." *Id*.

¶36. Counsel for the defense was not in error by allowing the statement by the State to be admitted. The record revealed that Davis was caught on video carrying a shotgun, reaching around the cash register, and walking around to the front of the cash register. It can easily be considered as trial strategy for Davis not to contest these facts. We are confident that the comment by the prosecutor did not result in a violation of Davis's fundamental rights or deprive him of a fair trial. Nor did it prejudice the jury against him. This issue is without merit.

## CONCLUSION

¶37. The issues presented by Davis on appeal have been reviewed and found to be without merit. The judgment of the Jackson County Circuit Court is hereby affirmed.

¶38. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE, GOOD-TIME, EARNED-TIME OR OTHER ADMINISTRATIVE REDUCTION OF SENTENCE AFFIRMED.**

**PRATHER, C.J., SMITH, MILLS, WALLER AND DIAZ, JJ., CONCUR. PITTMAN, P.J., CONCURS IN RESULT ONLY. BANKS, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE AND WALLER, JJ.**

**BANKS, PRESIDING JUSTICE, CONCURRING:**

¶39. I agree with the result reached by the majority. I write separately to note my disagreement with the conclusion reached in part V of the majority opinion.

¶40. In my view, the testimony that the defendant threatened a person to obtain the weapon allegedly used in a robbery has no rational relationship to motive or intent to commit the robbery. The only relevant fact is that the defendant obtained the weapon of a type used in the robbery, shortly before the robbery. The fact that he uttered a threat to obtain the weapon says nothing about a motive or intent to rob.

¶41. Despite the error in admitting this testimony, however, I would affirm because, in my view, this testimony pales in significance in light of the voluminous evidence, including a video tape of the event, indicating Davis's guilt. Moreover, Davis's rather dubious defense that he was too intoxicated to form the intent to rob could be helped rather than harmed by this testimony. Surely, intoxication helps explain why one would get into a confrontation with another, thereby creating an adverse witness, in order to obtain a weapon which one uses shortly thereafter to commit a crime.

**McRAE AND WALLER, JJ., JOIN THIS OPINION.**

**McRAE, JUSTICE, DISSENTING FROM THE DENIAL OF THE MOTION FOR REHEARING:**

¶42. Because the majority loses sight of the critical nature of impaneling a special venire jury to try the defendant and because the trial court began the voir dire process without the presence of the defendant or his counsel, I dissent. The relevant issue is whether one considers the trial court's excusing from a special venire approximately 28 jurors outside the presence of the defendant or his attorney while impaneling a jury drawn specifically for his trial violates Article 3, Section 26, of the Mississippi Constitution. We are not debating the voir dire process for a typical jury, i.e., one impaneled for a week to try various types of cases. We are specifically considering a special venire summoned to try one particular defendant.

¶43. On the opening day of trial, the trial judge began the voir dire process around 7:45 a.m. Apparently, it was the custom of the court to begin the voir dire process at that time. David L. Davis's counsel followed the order of the docket and thought the trial would begin at 9:00 a.m., yet he arrived in the courtroom around 8:05 a.m. The trial judge had already begun the voir dire process. Several members of the venire

were excused from jury service during the judge's initial voir dire, in the absence of Davis and his attorney. Some of these jurors were excused from service based on statutory exemptions such as age, but jurors were also dismissed for other reasons. Some of these jurors were excused for reasons such as being students or teachers, having business difficulties, and having sick children and childcare problems, all of which are not included in the bright-line excuse per the statutes. Miss. Code Ann. §§ 13-5-1 & -25 (1972 & Supp. 2000). Davis and his attorney should have been present when this initial voir dire was conducted in order to witness the dismissal of jurors for other than statutory reasons. If Davis had been present, he could have challenged each one of these dismissals, and the court would have to consider this challenge before dismissal.

¶44. Before the oath was administered to the remaining potential jurors, Davis's counsel made a motion to quash the jury based on his objection that the trial judge erred by beginning the voir dire process without the presence of the defendant or his counsel. The defendant and his trial counsel did not have the opportunity to object to the dismissal of any of the potential jurors during this initial voir dire.

¶45. Miss. Code Ann. § 13-5-1 states the requirements to judge the competency of potential jurors. Competent jurors must be over the age of 21, able to read and write, and either a qualified elector or a landowner for more than a year. They must not have been convicted of an infamous crime and must not be a habitual drunkard or common gambler. Miss. Code Ann. § 13-5-1 (1972). Miss. Code Ann. § 13-5-25 provides for two exemptions from jury service. One exemption is for persons over the age of 65, and the other is for persons who have served on a jury during the past two years. These exemptions are not mandatory and must be asserted by the individual. Miss. Code Ann. § 13-5-25 (Supp. 2000). In fact, those who have served on a jury during the past two years may still be called upon to serve if there is a deficiency of jurors. *Id.*

¶46. Miss. Code Ann. § 13-5-23 does permit dismissal, at the discretion of the trial court, of prospective jurors for serious illness or illness in the family, serious financial loss, and cases of emergency. However, these dismissals are discretionary with the trial court, and tests must be met by the individual before receiving this dismissal. Miss. Code Ann. § 13-5-23 (Supp. 2000). Therefore, the only prospective jurors who are automatically dismissed from service are those who do not meet the competency requirements as set forth in Miss. Code Ann. § 13-5-1. Dismissals under sections 13-5-23 or 13-5-25 are not automatic, and there is room for discretion when making decisions on these dismissals. Davis and his counsel should have been present when the trial judge was deciding these dismissals so that they could make any necessary objections.

¶47. This was a case where a special venire was drawn in order to determine the potential jurors. When a person has been charged with a capital crime or with the crime of manslaughter, the accused or the district attorney, upon demand, has the right to a special venire. If a special venire has been granted, it is the duty of the trial judge, in open court, to draw from the jury box as many names as he desires in his discretion, not less than 40, for each special venire that is demanded. It is the duty of the clerk of the court to issue a special venire facias, commanding the sheriff to summon the names of the persons so drawn to appear in court on a particular day. Miss. Code Ann. § 13-5-77 (Supp. 2000). No juror summoned as a special venireman shall be impaneled or serve on more than one jury. *Id.*

¶48. In this case, Davis filed a motion for a special venire, and the jury was then drawn from a special venire to sit for this particular case. This was not a typical jury, drawn for the week and expected to hear a

variety of cases. The special venire drawn in this case was drawn specifically to try this defendant.

¶49. The majority has adopted the bright-line rule stating that general questioning of prospective jurors to ascertain those who are qualified or exempt from jury service is not a critical stage of the trial. The majority states, "such statutory matters as whether a prospective juror is a resident of the county, is ill or has an illness in the family, or is over 65 years of age are not matters which necessitate a defendant's presence." The majority fails to recognize that the trial judge questioned the potential jurors as to matters that went beyond these statutory qualifications and requirements. For cases involving a special venire, the voir dire process is a critical stage of the trial.

¶50. The majority also fails to recognize the significance and the distinction of the use of the special venire in this case. The defendant's right to be present during all stages of a trial is even more important when there is a special venire selected. It is especially important for the defendant to be present during the voir dire process, as the members of the venire were selected specifically to judge this defendant. The trial judge questioned potential jurors as to their employment and business conflicts, excusing potential jurors for reasons such as the fact that they were students, teachers, single mothers, or construction workers. This questioning of the prospective jurors is within the trial judge's discretion but not within the enumerated statutory qualifications (13-5-1) or mandatory exemptions (13-5-25). Because the judge went outside the scope of these statutory qualification and exemption questions in the absence of the defendant or his attorney, the trial court committed error. The defendant should have been present during this part of the voir dire process so that he and his attorney could make any objections to these dismissals.

¶51. A defendant has "the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant." *Simmons v. State*, 746 So. 2d 302, 308 (Miss. 1999) (quoting *Rushen v. Spain*, 464 U.S. 114, 117, 104 S. Ct. 453, 78 L.Ed.2d 267 (1983)). Felony cases cannot be tried in the absence of the defendant. *Id.* at 306 (citing *Sandoval v. State*, 631 So. 2d 159, 164 (Miss. 1994)). In *Simmons*, this Court interpreted Miss. Code Ann. § 99-17-9 (1972) as not permitting a felony trial to be conducted in the absence of the defendant. Only in cases involving crimes less than felonies and when the defendant is "on recognizance or bail" does the statute permit trial in the absence of the defendant. *Id. Rolls v. State*, 52 Miss. 391, 394-95 (1876), affirms that a defendant should be present during all important and material stages of a trials. One of these important stages of the trial is the impaneling of the jury, and the defendant should be present for this. *Id.*

¶52. *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992) sums up the importance of the voir dire process as a critical stage of the trial:

It is true that voir dire "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." *Ristaino v. Ross*, 424 U.S. 589, 594, 96 S. Ct. 1017, 1020, 47 L.Ed.2d 258 (1976) (quoting *Connors v. United States*, 158 U.S. 408, 413, 15 S. Ct. 951, 953, 39 L.Ed. 1033 (1895)). The Constitution, after all, does not dictate a catechism for voir dire, but only that the defendant be afforded an impartial jury. Even so, part of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors. *Dennis v. United States*, 339 U.S. 162, 171-172, 70 S. Ct. 519, 523-524, 94 L.Ed. 734 (1950); *Morford v. United States*, 339 U.S. 258, 259, 70 S. Ct. 586, 587, 94 L.Ed. 815 (1950). "Voir dire plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate voir dire, the trial judge's responsibility to remove prospective

jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales-Lopez v. United States*, 451 U.S. 182, 188, 101 S. Ct. 1629, 1634, 68 L.Ed.2d 22 (1981) (plurality opinion).

¶53. The majority's bright-line rule runs opposite of the basic definition of "impanel" for jury purposes. The majority claims that upon review of sections found in Mississippi Code Annotated Title 13, Chapter 5, and many cases involving jury issues that the definition of what constitutes "impaneling the jury" is unclear. Black's Law Dictionary states "impanel" means "the act of the clerk of the court in making up a list of the jurors who have been selected for the trial of a particular cause. All the steps of ascertaining who shall be the proper jurors to sit in the trial of a particular case up to the final formation." *Black's Law Dictionary* 752 (6th ed. 1990); *see also Black's Law Dictionary* (Westlaw ed. 1999). Since case law includes the impanelment of the jury as a "critical stage" in the trial, and case law also states that a defendant should be present at all the critical stages of a trial, the impanelment of the jury must be considered a critical stage of the trial where the defendant is required to be present. The majority of this Court in the case sub judice creates its own definition of what constitutes impaneling the jury, and therefore, what is a critical stage of the trial.

¶54. The majority's bright-line rule for establishing what constitute s a critical stage of a trial at which the defendant must be present is wrong. A special venire requires the presence of the defendant as well as his attorney during the voir dire process, as it is a critical stage of his trial. The defendant and his attorney should be present during all stages of the trial, including the voir dire process. This Court should grant the motion for rehearing, reverse the trial court's judgment, and remand this case for a new trial before a properly impaneled jury. Because the majority fails to do this, I dissent.

1. The actual count of prospective jurors excused during the qualifying process on the day of trial was thirty-four. The record is not clear regarding how many, if any, were excused before defense counsel arrived, but based on counsel's admitted time of arrival as approximately 8:05 a.m. and the length of the trial judge's greetings, introductions and other niceties prior to beginning the qualifying process, there could not have been many.

2. Although *Simmons* erroneously cites *Bell v. Watkins*, 381 So. 2d 118, 134 (Miss. 1980) for this proposition, 746 So.2d at 308, this Court clearly held in *Simmons* that voir dire is a critical stage during which the defendant has a constitutional right to be present, although the term "voir dire" was not defined. From the trial court's statements and the facts set out in *Simmons*, it is seems clear that the critical stage would not include the judge's questioning during the statutory qualifying process.

3. Because much of the discussion involved whether juror no. 15 lived in close proximity to Davis's mother, the State was allowed to call Jackson County deputy sheriff Ellis to testify about the location of the homes. At the conclusion of the jury selection process, before the jurors returned to the courtroom, Ellis testified that it was not Davis's mother but rather his grandmother, who had raised Davis, who lived within two blocks of juror no. 15. He said he knew this because he had previously worked as a propane gas delivery person and delivered to that area of Moss Point for almost 10 years. Defense counsel was allowed to cross-examine Deputy Ellis and did not renew his *Batson* challenge to juror no. 15 after hearing this testimony.